Gary B Moore
(Name)
P.O. Box 5002
(Address)
Calipatria Calif. 92233
(City, State, Zip)
F17016
(CDC Inmate No.)

FILED
JUL 2 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

# United States District Court
## Southern District of California

Gary B Moore,
(Enter full name of plaintiff in this action.)

Plaintiff,

v.

J. Sigler, J. Watt
J.A. Catlett, C. Hughey,
J. Anaya, Steele,
A. Thompson,
(Enter full name of each defendant in this action.)

Defendant(s).

'08 CV 1198 H PCL
Civil Case No. ___________
(To be supplied by Court Clerk)

Complaint Under the Civil Rights Act 42 U.S.C. § 1983

2254 1983 ✓
FILING FEE PAID
Yes No ✓
IFP MOTION FILED
Yes ✓ No
COPIES SENT TO
Court ✓ ProSe

**A. Jurisdiction**

Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. If you wish to assert jurisdiction under different or additional authority, list them below.

**B. Parties**

1. Plaintiff: This complaint alleges that the civil rights of Plaintiff, Gary B Moore (print Plaintiff's name), who presently resides at P.O. Box 5002 (mailing address or place of confinement), were violated by the actions of the below named individuals. The actions were directed against Plaintiff at Calipatria State Prison (institution/place where violation occurred) on (dates) on going (Count 1) since 2006 (Count 2), and (Count 3).

2. Defendants: (Attach same information on additional pages if you are naming more than 4 defendants.)

Defendant J. Sisler (name) resides in Imperial (County of residence), and is employed as a correctional lieutenant (defendant's position/title (if any)). This defendant is sued in his/her ☑ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: because anything done to you by a prison guard prison doctor or prison administrator is an action under color of state law

Defendant T. A. Catlett (name) resides in Imperial (County of residence), and is employed as a correctional Sergent (defendant's position/title (if any)). This defendant is sued in his/her ☑ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: because anything done to you by a prison guard prison doctor or prison administrator is an action under color of state law

Defendant J. Anaya (name) resides in Imperial (County of residence), and is employed as a CC II (defendant's position/title (if any)). This defendant is sued in his/her ☑ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: because anything done to you by a prison guard, prison doctor or prison administrator is an action under color of state law

Defendant A. Thompson (name) resides in Imperial (County of residence), and is employed as a Correctional Sergeant (defendant's position/title (if any)). This defendant is sued in his/her ☑ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: because anything done to you by a prison guard prison doctor or prison administrator is an action under color of state law

Defendant: J. Nutt (name) Resides in (county of resident)

and is employed as Correctional Officer. This defendant is sued in his/her ☑ individual ☐ official capacity Explain how this defendant was acting under color of law: because anything done to you by a prison guard or prison doctor doctor or prison administrator is an action under color of state law

Defendant C. Hughey (name) Resides Imperial (county of resident)

and is employed as a correctional officer This defendant is sued in his/her ☒ individual ☐ official capacity. Explain how this defendant was acting under color of law: because anything done to you by a prison guard prison doctor or prison adminstrator is an action under color of state law

Defendant Steele (name) Resides in Imperial county of Residence

and is employed as a correctional officer This defendant is sued in his/her ☒ individual ☐ official capacity. Explain how this defendant was acting under color of law: because anything done to you by a prison guard prison doctor or prison adminstractor is an action under color of state law

**C. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary.)

Count 1: The following civil right has been violated: Retaliation

(E.g., right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 1.]

Lt Siglea, J. Aranaya, Sgt Cathett, Sgt Thompson, c/o Nutt, c/o Hughey, c/o Steele

These defendants filed and/or had filed false disciplinary charges against complaintant in Retaliation for his filing lawsuits and grievances Exhibit "A"

See Woods v. Smith, 60 F.3d 1164 (5th Cir. 1995)

This is also Retaliation for Lt Siglea to have my 115 hearing Regarding the weapons charge in my absentia. Lt Siglea lied about myself waving my Right to be at the hearing.

Count 2: The following civil right has been violated: Due Process
(E.g., right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 2. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 2.]

The 115 for Weapon violation was dated 9/17/07
I Requested an Investigator 9/23/07 so the invesigation could get started as soon as possible to prove my innocents. I didn't get an (IE) untill 5/28/08
I was placed in Administrative Segregation on 9/17/07

See Exhibit "B"

Count 3: The following civil right has been violated: Retaliation
(E.g., right to medical care, access to courts,

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 3. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 3.]

ON April 17, 2008 complantant had been in ad-seg 7 mos.
I had no money on the books, no visits, I had not been to the yard with other inmates, I had been locked-up 24, 7

4/17/08 - C/O Nutt came to my cell to give me a Random Drug test

I also believe, they knew at this point in time the weapons charge is or would be a DA Reject

These People were gonna put some drug in my urine and give me a criminal drug case pursuant to Title 15 § 3290(F)

But C/O Nutt and Sgt Sgt Thompson could not get this set up Right and get a URine sample from me. see Exhibit "C"

**D. Previous Lawsuits and Administrative Relief**

1. Have you filed other lawsuits in state or federal courts dealing with the same or similar facts involved in this case? ☑ Yes ☐ No.

If your answer is "Yes", describe each suit in the space below. [If more than one, attach additional pages providing the same information as below.]

(a) Parties to the previous lawsuit:
Plaintiffs: Gary B Moore
Defendants: Sgt Catlett, T. Ochoa, J Awaya, W. Grannis
(b) Name of the court and docket number: 08-0904 IEG NLS
U.S. District Court Southern District.
(c) Disposition: [For example, was the case dismissed, appealed, or still pending?] pending

(d) Issues raised:
medical disability

(e) Approximate date case was filed: May 19, 2008.
(f) Approximate date of disposition: pending.

2. Have you previously sought and exhausted all forms of informal or formal relief from the proper administrative officials regarding the acts alleged in Part C above? [E.g., CDC Inmate/Parolee Appeal Form 602, etc.] ? ☑ Yes ☐ No.

If your answer is "Yes", briefly describe how relief was sought and the results. If your answer is "No", briefly explain why administrative relief was not sought.

Count 4: The following Civil Right has been Violated: Retaliation putting me in harms way

Supporting Facts.

9/27/07 at the committee meeting in ad-seg I was placed on walk-alone status because Yolluck informed the committee that I had been threated by "Blood Gang members. One of the Blood Gang member who had threated me was my former cellmates who was in the cell with me when the allege weapon was found 9/17/07

on 3/27/08 at the committee meeting in ad-seg Sgt Catlett stated that I was not threated by Blood Gang member but was in fact threet by "Crip Gang member - I was taken off walk-alone status and put on the yard time with "Blood Gang member" I did not go to yard time after this move was made

J Anaya Runs these committee meeting in ad-seg.

J. Anaya and Sgt Catlett had gotten together on this action to Retaliate against and put me in harms way.

See Exhibit "D" Pocket

## E. Request for Relief

Plaintiff requests that this Court grant the following relief:

1. An injunction preventing defendant(s):

2. Damages in the sum of $ 1 millioN dollaRs
3. Punitive damages in the sum of $ 1 millioN dollaRs
4. Other:

## F. Demand for Jury Trial

Plaintiff demands a trial by ☑ Jury ☐ Court. (Choose one.)

## G. Consent to Magistrate Judge Jurisdiction

In order to insure the just, speedy and inexpensive determination of Section 1983 Prisoner cases filed in this district, the Court has adopted a case assignment involving direct assignment of these cases to magistrate judges to conduct all proceedings including jury or bench trial and the entry of final judgment on consent of all the parties under 28 U.S.C. § 636(c), thus waiving the right to proceed before a district judge. The parties are free to withhold consent without adverse substantive consequences.

The Court encourages parties to utilize this efficient and expeditious program for case resolution due to the trial judge quality of the magistrate judges and to maximize access to the court system in a district where the criminal case loads severely limits the availability of the district judges for trial of civil cases. Consent to a magistrate judge will likely result in an earlier trial date. If you request that a district judge be designated to decide dispositive motions and try your case, a magistrate judge will nevertheless hear and decide all non-dispositive motions and will hear and issue a recommendation to the district judge as to all dispositive motions.

You may consent to have a magistrate judge conduct any and all further proceedings in this case, including trial, and the entry of final judgment by indicating your consent below.

Choose only one of the following:

☐ Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

☑ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

I declare under the penalty of perjury that the foregoing is true and correct.

June 30, 2008
Date

Gary B Moore
Signature of Plaintiff

# Exhibit "A" Packet

Begins with a July 11, 2007 incident Report on 8/16/07 Lt Siglee had to drop this July 11, 2007 115 because C/o Watts who wrote it up lied on me and did not want to face me in a hearing

also on 8/16/07 Lt siglee threated me that if I did not take the deal he had, something worse would happen to me.

I did not take the deal 8/16/07 then Sept 17, 07, I get the weapon charge.

— 602 to the Director's Level about the threat from Lt Sigler

Rules Violation Report Part C Regarding the allege weapon

SHU Team assessment worksheet

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C

PAGE____OF____

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 07-07-B34 | CSP-CAL | 08/16/07 |

☐ SUPPLEMENTAL ☐ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☐ IE REPORT ☐ OTHER______

On Thursday, August 16, 2007, at approximately 2000 hours, Inmate MOORE, F-17016 appeared before me for adjudication of this Rules Violation Report (RVR) Log Number 07-07-B34. I introduced myself as the Senior Hearing Official (SHO) for this disciplinary hearing and explained the hearing rules and procedures. Inmate MOORE stated that he was in good health, and acknowledged receipt of all reports 24 hours prior to this hearing and was ready to proceed with this hearing. All time constraints and due processes have been met. Inmate MOORE acknowledged receipt of all reports and/or pertinent documents more than twenty-four (24) hours in advance of the hearing as required per CCR §3320 (c)(2). Inmate MOORE is not a participant in the Mental Health Services Delivery System (MHSDS), Disability Placement Program (DPP), or the Developmental Disability Program (DDP). Inmate MOORE does not appear on the Testing Literacy Report as having a TABE score of 4.0 or below

**DUE PROCESS**: All time constraints have been met. There are no Due Process errors.

x **EFFECTIVE COMMUNICATION**

Effective communication was established with Inmate MOORE by the SHO reading the RVR slowly to Inmate MOORE. Inmate MOORE was instructed to read the RVR back to the SHO and identify any portions of the RVR that he did not understand. The SHO asked Inmate MOORE if he understood what he had just read and he stated "Yes". It is the opinion of the SHO that Inmate MOORE understands the charge and understands his Due Process.

**STAFF ASSISTANT**: Per §California Code of Regulations (CCR) 3315(d) (2) a Staff Assistant (SA) was not assigned. Inmate MOORE is literate, speaks English in the written and/or verbal form and the complexity of the issues are such that assistance is not necessary for Inmate MOORE to comprehend the nature of the charges of the disciplinary process

**INVESTIGATIVE EMPLOYEE**: Per §California Code of Regulations (CCR) 3315 (d) (1) an Investigative Employee (IE) was not assigned.

x **INMATE'S PLEA**: The charges were read to Inmate MOORE and he plead "NOT GUILTY".

x **INMATE'S STATEMENT**: Inmate MOORE chose not to make any statement other than entering his plea of "NOT GUILTY".

**WITNESSES**. Inmate MOORE requested the RE at this hearing. The Reporting Employee (RE) was not available due to illness and a scheduled vacation period and would not be available. The SHO elected to "Dismiss" Rules Violation Report (RVR) Log Number 07-07-B34 in the Interest of Justice.

x **FINDINGS:**

This CDC 115 was dismissed in the interest of justice, due to non availability of requested witness.

Inmate MOORE was advised of his rights to appeal the findings and/or disposition of the hearing, pursuant to CCR §3084.1 and CCR §3312 (b) (1) and advised he would receive a completed copy of this hearing report upon final audit by the Chief Disciplinary Officer (CDO) whose review and signature affirms, reverses, or modifies this disciplinary action and constitutes the First Level of Review for appeal purposes.

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | J. SIGLER, Correctional Lieutenant | | 8/16/07 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | J. Olivarez \ OC | 9/26/07 | 1400 |



OSP 99 25082

104

804 TO RECORDS

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

AS-130L

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| F-17016 | MOORE | 11-16-2017 | CSP-CAL | B3-111L | 07-07-B34 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR # 3005 (a) | Willfully Delaying a Peace Officer | H/U B3 | 07/11/07 | 1815 HRS. |

CIRCUMSTANCES

On Wednesday, July 11, 2007, at approximately 1815 hours, while performing my duties as Facility "B3" Floor Officer #2, I returned to the Housing Unit after the completion of cell feeding to collect the Housing Unit trays. I approached cell 111 to begin the collection of the trays and Inmate MOORE (F-17016, B3-111L) refused to relinquish his evening meal tray to me in protest for the "A" section Housing Unit Air Conditioning not working. I attempted to collect the trays from the remaining cells and discovered that all of inmates in the Housing Unit were refusing to relinquish there trays. I notified the Program Sergeant of the inmate populations refusal to relinquishes there trays. Maintenance Staff had been advised of the problem prior to the start of my shift and I was advised that Maintenance Staff were in the process of repairing the Air Conditioning problem affecting "A" section. B and C sections Air Conditioning was working. Inmate MOORE'S Willful Disobedience and his refusal to relinquishes his tray "Delayed me in the Performance of my Duties" for approximately 1 hour and 30 minutes disrupting all Housing Unit Program. All Showers and Telephone calls were suspended until all dining trays were accounted for. Maintenance repaired the problem and I collected and accounted for all 200 trays at approximately 1945 hours. Inmate MOORE is not a participant in the Mental Health Services Delivery System (MHSDS), Disability Placement Program (DPP), or the Developmental Disability Program (DPP). Inmate MOORE does not appear on the Testing Literacy Report as having a TABE score of 4.0 or below.

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ W. WATTS, Correctional Officer [signature] | 7/11/07 | "B3" Floor #2 | Thur/Fri |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| ▶ O. VALDEZ, Program Sergeant [signature] | 7/16/07 | DATE N/A | LOC. N/A |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒ SERIOUS | D | 7/18/07 | ▶ M.D. CARPIO, LIEUTENANT [signature] | ☐ HO ☒ SHO ☐ SC ☐ |

COPIES GIVEN INMATE BEFORE HEARING

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| ☐ CDC 115 | ▶ [signature] | 7/15/07 | 1106 | | | |
| ☐ INCIDENT REPORT LOG NUMBER: | ▶ | DATE | TIME | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |

HEARING

RVR Continued on CDC-115, Part "C"

Lt Sigler had to drop this 115 on 8/16/07 after I would not take his deal, they had tried to give me 4 or 5 different hearing each time I requested C/O Watt who lied about me refusing to give up my tray C/O Watts was at work some of the times and could have been at the hearing.

Lt Sigler threat me 8/16/07 if I didn't take his deal something worse would happen to me

Harry B Moore

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | | SIGNATURE | DATE | TIME |
|---|---|---|---|---|
| J. SIGLER, Correctional Lieutenant | | ▶ [signature] | | |
| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE | |
| ▶ W. J. PRICE, CPT, Facility "B" [signature] | 8/5/07 | ▶ G. J. JANDA, AW, A/B [signature] | 8/8/07 | |
| ☒ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | | BY: (STAFF'S SIGNATURE) ▶ J. Olivarez | DATE 8/26/07 | TIME |

CDC 115 (7/88)

804 TO RECORDS 9/17/08

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| F-17016 | MOORE | EPRD 5/16/2027 | CAL-SP IV | B3-111L | 09-07-B22 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR §3006(a) | POSSESSION OF INMATE MANUFACTURED WEAPON | H.U. B3 | 09/17/07 | 10:30 HRS |

CIRCUMSTANCES

On Monday, September 17, 2007, at approximately 10:30 hours, while performing my duties as B Vocational Officer #3, I reported to Housing Unit B3 to conduct facility-wide searches. Officer R. Steele and I approached cell B3-111, jointly occupied by Inmates BENTON, F-72655, and MOORE, F-17016. C/O Steele conducted unclothed body searches on both inmates with negative results and placed them both in handcuffs. I escorted Inmate BENTON to the C-section dayroom benches. C/O Steele and I then searched cell B3-111. During the course of the search, while using an unfolded paper clip, I discovered one (1) item hidden in the gap where the lower left shelf of the lower shelving unit attaches to the wall. Using another large unfolded paper clip, I removed one (1) inmate manufactured weapon from this gap. I maintained sole possession of this weapon by placing it inside of my lower left leg pocket of my jump suit. C/O Steele and I completed the search with no further contraband being found.

CONTINUED ON CDC-115 PART C

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ C. HUGHEY, Correctional Officer | 9/20/07 | B VOC OFCR #3 | S/SU/H |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING |
|---|---|---|
| ▶ T. A. CATLETT, Correctional Sergeant | 9/20/07 | DATE 09/17/07 LOC. A5-128L |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒ SERIOUS | A-1 181-360 | 9/21/07 | ▶ | ☐ HO ☐ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| CDC-115A | ▶ | 9-23-07 | 2013 | PHOTOCOPY OF EVIDENCE/WEAPON |
| ☐ INCIDENT REPORT LOG NUMBER: CAL-FB3-07-09-0273 | BY: (STAFF'S SIGNATURE) ▶ | 10/9/07 | 1035 | BY: (STAFF'S SIGNATURE) ▶ — DATE 10/9/07 TIME 1035 |

HEARING

RVR Continued on CDC-115, Part 'C'.

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| J. SIGLER, Correctional Lieutenant | ▶ | 10/1/07 | 2100 |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| ▶ J. KELLERMAN, Captain, Facility "B". | 6-23-08 | ▶G. J. JANDA, AW, A/W | 6/23/08 |

| ☒ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|
| | ▶ J. Olivarez | 6/26/08 | 1500 |

CDC 115 (7/88)

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## RULES VIOLATION REPORT - PART C

PAGE 2 OF 2

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CAL-SP IV | 09/17/07 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☒ 115 CIRCUMSTANCES ☐ HEARING ☐ IE REPORT ☐ OTHER

I escorted Inmate BENTON to Facility B Program Office where I searched the program holding cell and placed Inmate BENTON inside the holding cell. The inmate manufactured weapon measured approximately 4 1/2 inches long and 7/8 of an inch wide sharpened to a point at one end. The weapon was manufactured from flat metal stock. I proceeded to Central Control where I filled out a brown evidence bag, placed the weapon inside the bag and placed the bag inside Central Control evidence locker #1.

Inmate MOORE is not a participant in the Mental Health Services Delivery System (MHSDS).

Inmate MOORE is aware of this report.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| C. HUGHEY, Correctional Officer | 9/20/07 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | | 9-23-07 | 2023 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## RULES VIOLATION REPORT - PART C

PAGE 1 OF 6

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL-IV | 06/04/08 |

☐ SUPPLEMENTAL ☐ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☒ IE REPORT ☐ OTHER

On Wednesday, May 28, 2008, at approximately 0900 hours, Correctional Officer R. Acevedo introduced himself to Inmate MOORE, (F-17016) as having been assigned as his Investigative Employee (IE), for Rules Violation Report, CDC-115, Log # 09-07-B22, charging him with violation of CCR 3005 (a), for the specific act of "**POSSESSION OF AN INMATE MANUFACTURED WEAPON**", per California Code of Regulations, Title 15, Section 3315 (d) (1) (2) (A). Officer Acevedo advised Inmate MOORE that his function is to collect information, interview him, the Reporting Employee and all witnesses having information about the event. Inmate MOORE stated that he understood Officer Acevedo's functions however expressed objections to the assignment of Officer Acevedo. Per California Code of Regulations, Title 15, Section 3315 (3) (C) a second I. E was assigned.

On Thursday, May 29, 2008, at approximately 0900 hours, I introduced myself to Inmate MOORE, (F-17016) as having been assigned as his Investigative Employee (IE), for Rules Violation Report, CDC-115, Log # 09-07-B22, charging him with violation of CCR 3005 (a), for the specific act of "**POSSESSION OF AN INMATE MANUFACTURED WEAPON**", per California Code of Regulations, Title 15, Section 3315 (d) (1) (2) (A). I advised Inmate MOORE that my function is to collect information, interview him, the Reporting Employee and all witnesses having information about the event. Inmate MOORE stated that he understood my function and expressed no objections to my assignment. Therefore as the assigned and accepted Investigator, I conducted the investigation and submitted the findings in this report.

**STATEMENT OF CHARGED INMATE**: Inmate MOORE presented the following handwritten statement for this hearing; "I requested an Investigator 10-18-07 (October 18, 2007) right after this incident happened. I objected to any postponement of the investigation.

The failure of Prison Officials to appoint an Investigative Employee, 8 months ago violated petitioner's right to a fair hearing as protected by Title 15, Cal. Admin, Code Section 3315 (d) and 3318 (b) and the Due Process clause of the State and Federal Constitution.

Section 3315 of that code reflect(s) recognition that a prisoner who is placed in segregation pending a disciplinary hearing is seriously disabled in his ability to collect evidence on his behalf. Therefore subsection (d) of that section provides for the assignment of an investigative employee and/or staff assistant where "the inmate's housing status makes it unlikely that he can collect and present evidence necessary for an adequate comprehension of the case".

I was placed in segregation at the time of this incident 8 months ago.

No where in the Title 15, does it authorize to postpone an investigation. Section 3316 (c) authorize postponing pending referral for prosecution – not an investigation.

My investigation should have been completed 8 months ago. I would have had a fair chance to prove my innocence.

I.E continued on CDC-115, Part "C".

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | J. OLIVAREZ, Correctional Officer (signature) | | 6/05/08 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) J. Olivarez (signature) | DATE SIGNED 6/05/08 | TIME SIGNED 1530 |

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS

PAGE 2 OF 6

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL-IV | 06/04/08 |

☐ SUPPLEMENTAL ☐ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☒ IE REPORT ☐ OTHER

See all discrepancies may or may not be poignant: 10-19-07

1) Notice 115 Reports all knives were supposed to be found at 11:15 A.M. Even though the days are 5 days after each other. WHITLEY, (T-51186), ALEXANDER, (V-20392)-9-12-07. FISCHER, (T-18428), ALBERGATE. K-29470)-09-12-07

2) On the 114 of FISCHER, (T-18428), ALBERGATE. (K-29470)-it shows a cell search at 10:30 A.M. hrs. When the knife was found, but on the CDC-115, it shows a weapon stock was found during a cell search at 11:15 A.M. hrs-9-17-07. 2 (two) separate reports on 2 (two) separate falsified Reports.
B) Suspiciously the other two cells searched B3-111 and B3-215 were also searched at exactly 1030 with weapons found. Exhibit C pages 10 and 16 of Incident Report.

3) Exhibit C page 2 of Incident Report shows (B3-11) cell housed MOORE, (F-170016) and BENTON, (F-72655). Also it shows (B3-215) cell housed WALL, (F-46333) and GEBREZGIABHER, (T-43976). Point: "Under Suspects" MOORE, (F17016) housed with WALL (F-46333) in cell B3-111 and BENTON, (F-72655) and GEBREZGIABHER, (T-43976) housed in B3-215. When under "Precipitating Events", Exhibit C page 2 of same report clearly shows WALL (F-46333) and BENTON, (F-72655) were never housed in these particular cells. Theory: Maybe a simple mistake by the preparer of page 2 of 24 (The exhibit C Incident Report, or possibly a list made of suspects prior to cell searches by officers not knowing their actual housing units until after the actual search.

3) The weapons "found" in these cells were behind or in the crevices between the wall and the locker. Why are there (remaining statement could not be determined). Actual weapons, lodged in these areas and in WHITLEY, (T-51186), and ALEXANDER, (V-20392), case involving C/O Hughey nor were their witnesses to the removal of said weapon, by C/O Hughey. Note: Not once in the report by C/O Hughey of WHITLEY, (T-51186), or ALEXANDER'S, (V-20392) does it state in either 115, he C/O Taylor was a witness to placement or the removal of the weapon stock. C/O Taylor stated in WHITLEY, (T-51186), and ALEXANDER'S, (V-20392), Crime Incident Report page 9, that he was a responder who escorted the 2 (two) to the program office to the holding cells. Not once does he mention being a witness to the search, placement or removal of said weapon by C/O Hughey. While in the holding cell WHITLEY, (T-51186), ALEXANDER, (V-20392) witnessed C/O Taylor and Sgt Catlett observe the weapon, which C/O Hughey pulled out of his left leg jump suit wrapped in a brown paper towel for the first time. Point: C/O Hughey is willing to operate by any means to either work a lone or implement other officers to conspire, false reports, fabricate evidence in order to violate inmate's constitutional rights of fair and equal protection of the law.

B) In the Crime Incident Report, prepared by C/O Hughey of WHITLEY, (T-51186), and ALEXANDER, (V-20392) shows C/O Hughey as the primary Officer who then later wrote in C/O Taylor as a witness to cover his tracks (CI) Report page 6 of 9, of WHITLEY, (T-51186), ALEXANDER, (V-20392).

I.E continued on CDC-115, Part "C".

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| J. OLIVAREZ, Correctional Officer [signature] | | 6/05/08 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) J. Olivarez [signature] | DATE SIGNED 6/05/08 | TIME SIGNED 1530 |

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS

PAGE 3 OF 6

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL-IV | 06/04/08 |

☐ SUPPLEMENTAL ☐ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☐ IE REPORT ☐ OTHER

5) These are just some of the motive that stand out in these points made, rather if they're relevant are for someone else, who can help us decide. I am no attorney, but these actions by the officers seem suspicious not to mention. May be a (can not make out) can see more.

6) CI Report (page 10 and 14) clearly shows C/O Colio on primary and C/O AYON as a witness in their own a separate reports.

7) CI Report (page 16 and 24) clearly shows C/O Steel as primary and C/O Hughey as a witness in their own separate reports. Note: CI Report of WHITLEY, (T-51186), and ALEXANDER, (V-20392), C/O Hughey reported C/O Taylor as a witness. C/O Taylor's report says he wasn't.

In my opinion C/O Hughey of being a 13 year highly decorated veteran of the most bust for illegal contraband would have the knowledge to circumvent procedures, dabble in gray areas which would benefit to the success of some of the bust in question. I think that he thinks he is able with full confidence to work within the facility above the law. I also think that C/O Hughey and said Officers in these reports should be investigated for their actions and inconsistencies in these reports, because Officer Hughey of being a 13 year veteran should know better.

As of 10-22-07, Inmate BENTON, (F-22655) was Found Not Guilty" of his 115 hearing, with the same write up, same evidence as WHITLEY and ALEXANDER. ALEXANDR and WHITLEY were found "Guilty". Note: Officer involved; C/O Hughey.

Pursuant Title 15, § 3287 (a): Cell, Property, Body Inspections. A) I'm requesting the paperwork that this cell B3-11 was thoroughly inspected before I moved in. B) I never signed off on any paperwork to that effect. C) I'm requesting the person who searched this cell B3-111 before I moved in as a witness. D) The purpose of such inspection ids to fix responsibility or the absence of responsibility for security and safety hazards and serious contraband found in the cell, room, dormitory area.

Note: Upon reviewing the cell search log book for Housing Unit B3, the book only goes back to March of 2008. Documentation for cell 111 only references current occupants.

Pursuant Title 15, § 3287 (3): This was a special search looking for weapons because weapons had been found on the yard.
A). I asked C/O Hughey to watch this search and would (was) not allowed to watch this search. Since this was a special search, I should have been permitted to observe this search.

Inmate MOORE presented the following questions to be investigated and answered by the assigned I.E.

I.E continued on CDC-115, Part "C".

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| J. OLIVAREZ, Correctional Officer (signature) | | 6/05/08 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) J. Olivarez (signature) | DATE SIGNED 6/05/08 | TIME SIGNED 1530 |

STATE OF CALIFORNIA
RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS
PAGE 4 OF 6

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL-IV | 06/04/08 |

☐ SUPPLEMENTAL ☐ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☒ IE REPORT ☐ OTHER

**Inmate MOORE submitted the following questions to Correctional Officer Luck**

Q1. In Ad-Seg, Inmate BENTON, (F-72655) was initially placed in a cell by his self and requested to be placed in a gang member's cell here in Administration Segregation?
A1. This question was disallowed by the SHO as it has no relevancy to the specific charge.
Q2. Is this true?
A2. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q3. What is the affiliation of the inmate he is now celled with? When he was in Ad-Seg, who he requested to move in the cell with?
A3. This question was disallowed by the SHO as it has no relevancy to the specific charge

Inmate MOORE had no further questions for Officer Luck.

**Inmate MOORE submitted the following questions to Sergeant Walker.**

Q1. When you were a C/O in Building #5, you knew myself, Inmate MOORE, (F-17016, B3-111) to be a non-gang member and wanted to be housed with a non gang member.
A1. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q2. You took me into building #5 to meet an inmate, a non-gang member from the bay area. He told me his name was Gutter.
A2. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q3. We all three agreed you would move this inmate into the cell with me from building 5, into B3-111 the next day.
A3. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q4. After a few days past and this move didn't happen. I asked you what happen to this move. You told me that you ask the MAC rep in B3 (who was a gang member) did someone move into B3-111, you told me he said someone moved into B3-111, and I told you that was a lie.
A4. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q5. You told me that's why, the move didn't take place. A gang member called off that move. That gang member had already talked to me about moving one of his gang members into the cell with me (B3-111) and I had previously told him "No".
A5. This question was disallowed by the SHO as it has no relevancy to the specific charge

Inmate MOORE had no further questions for Sergeant Walker.

**Inmate MOORE submitted the following questions to Officer Baltazar.**

Q1. On the day the move took place, Inmate BENTON, (F-72655) into B3-111 with Inmate MOORE, (F-17016) your partner C/O Hurtado did not work that day, who orchestrated the move.
A1. This question was disallowed by the SHO as it has no relevancy to the specific charge

I.E continued on CDC-115, Part "C".

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| J. OLIVAREZ, Correctional Officer (signature) | 6/05/08 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | J. Olivarez (signature) | 6/05/08 | 1530 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE 5 OF 6

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL-IV | 06/04/08 |

☐ SUPPLEMENTAL ☐ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☒ IE REPORT ☐ OTHER

Q2. Didn't Inmate MOORE ask you, why is this inmate moving into the cell with him, because no one talk(ed) to MOORE about this move.
A2. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q3. Didn't you tell Inmate MOORE that you thought your partner C/O Hurtado talked to every (one) involved in the move because in house move for convenience the policy is to talk (to) everyone involved in the move.
A3. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q4. What were the two Blood inmates name and number that you moved from downstairs to upstairs in to BENTON, (F-72655) cell?
A4. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q5. You knew that inmate didn't want to be housed with gang members
A5. This question was disallowed by the SHO as it has no relevancy to the specific charge

Inmate MOORE had no further questions for Officer Baltazar

**Inmate MOORE submitted the following questions to Officer Hurtado.**

Q1. Two Blood gang members were in the cell downstairs in building #3 and wanted to move upstairs in cell BENTON, (F-72655)
A1. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q2. So you C/O Hurtado and the two blood gang members and Inmate BENTON, (F72655) a blood and Inmate TEAT the guy I was in the cell with at the time. It's a question to what affiliation TEAT is. C/O Hurtado you and these alleged gang members got together and orchestrated to move Inmate TEAT out of B3-111 and into the cell with his folks in B3-202 and move BENTON out of the cell he was in upstairs by his self into the cell with MOORE, (F17016, B3-111); Then you moved the two Blood gang member upstairs into the cell inmate BENTON was in- is that correct?
A2. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q3. Don't you know gang members are ready to fight for cells and their have been problems in B3 about gang members trying to pressure non-gang members out of the cell they are assigned to in the building B3, so they can put gang members in the cell. There was a problem of this nature with cell 125, that you were aware of-is this correct?
A3. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q4. C/O Hurtado why did you talk to all of the inmates involved in the in house move except me Inmate MOORE, F-17016) MOORE. Especially because the move was made for the convenience of gang members personal convenience
A4. This question was disallowed by the SHO as it has no relevancy to the specific charge

Inmate MOORE had no further questions for Officer Hurtado

Inmate MOORE requested the following staff/inmates as witnesses during his hearing:

1. Correctional Officer Hurtado
2. Correctional Officer Baltazar

I.E continued on CDC-115, Part "C".

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| J. OLIVAREZ, Correctional Officer | 6/05/08 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | J. Olivarez \ C/O | 6/05/08 | 1530 |

STATE OF CALIFORNIA

RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS
PAGE 6 OF 6

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL-IV | 06/04/08 |

☐ SUPPLEMENTAL ☐ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☒ IE REPORT ☐ OTHER

3. Correctional Officer Luck
4. Correctional Sergeant Walker
5. Chief Deputy Warden Ochoa
6. Correctional Sergeant Silva
7. Associate Warden A/B G. J. Janda
8. Inmate BENTON, K-72655
9. Inmate ALEXANDER, V-20392
10. Inmate WHITLEY, T-51186
11. Inmate GEBREZGIABHER, T-43976
12. Inmate FISHER, T-18428
13. ALBERGATE, K-29470
14. The Correctional Officer who searched the cell B3-111, before I moved into this cell pursuant to Title 15, 3287(a)

**REPORTING EMPLOYEE'S STATEMENT: I interviewed C. Hughey who stated the following;** "On Monday, September 17, 2007, at approximately 1030 hours, while performing my duties as B Vocational Officer #3, I reported to Housing Unit B3 to conduct facility wide searches. Officer R. Steel and I approached cell B3-111, jointly occupied by Inmates BENTON, (F-72655) and Inmate MOORE, (F-17016). C/O Steele conducted unclothed body searches on both inmates with negative results and placed them both in handcuffs. I escorted Inmate BENTON to the C-Section dayroom benches. C/O Steele and I then searched cell B3-111. During the course of the search, while using an unfolded paper clip, I discovered one (1) item hidden in the gap, where the lower left shelf of the lower shelving unit attaches to the wall. Using another large unfolded paper clip, I removed one (1) inmate manufactured weapon from the gap. I maintained sole possession of this weapon by placing it inside of my lower left leg pocket of my jumpsuit. C/O Steele and I completed the search with no further contraband being found. I escorted Inmate BENTON to Facility B Program Office where I searched the program holding cell and placed Inmate BENTON inside the holding cell. The Inmate manufactured weapon measured approximately 4 ½ inches long and 7/8 of an inch wide sharpened to a point at one end. The weapon was manufactured from flat metal stock. I proceeded to Central Control where I filled out a brown evidence bag, placed the weapon inside the bag and placed the bag inside Central Control evidence locker #1.

Inmate MOORE submitted statements and not question that could be answered via the I.E process.

**Inmate MOORE DOES Request the Reporting Employee at the Hearing.**
**Inmate MOORE DOES NOT Request the Investigative Employee at the Hearing.**
**Inmate MOORE DOES Request Inmate Witnesses' at the Hearing.**
**Inmate MOORE DOES Request a Staff Witnesses at the Hearing.**

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| J. OLIVAREZ, Correctional Officer [signature] | 6/05/08 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | J. Olivarez [signature] | 6/05/08 | 1530 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE 1 OF 12

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL | 06/15/08 |

☐ SUPPLEMENTAL ☐ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER______

On Sunday, June 15, 2008, at approximately 1513, hours, Inmate MOORE, F-17016, appeared before me for adjudication of this Rules Violation Report (RVR) Log Number 09-07-B22. I introduced myself as the Senior Hearing Official (SHO) for this disciplinary hearing and attempted to explain the hearing rules and procedures. Inmate MOORE stated that he was in good health, and acknowledged receipt of all reports 24 hours prior to this hearing however stated that he was **not** ready to proceed with this hearing. Inmate MOORE stated that his requested witness were not present and that he wanted to have the SHO present that disallowed his I.E. questions. The SHO attempted to explain to Inmate MOORE that his questions would be addressed during the hearing. Inmate MOORE stated that he was **not** ready to proceed with this hearing. The SHO advised Inmate MOORE that he could request a 30 day postponement per 3320 (2) (d). The SHO asked Inmate MOORE if he wanted to postpone this hearing per CCR 3320 (d) and Inmate MOORE stated that he would not sign indicating that he wanted to postpone this hearing. Inmate MOORE stated that this is the 33rd day. Inmate MOORE became agitated and began to argue with the SHO after he was advised that the SHO was going to continue with the hearing as he would not cooperate or participate in the hearing. The SHO informed Inmate MOORE that this hearing would be held in absentia for his refusal to cooperate with the SHO and/or sign the CDC-115A indicating he was requesting a postponement. Inmate MOORE refused to sign the CDC-128, informational chrono, indicating that he postpone and/or waived his rights to be present in writing per CCR §3320 (g) (3). This hearing was held in absentia due to his refusal. All time constraints and due processes *have not* been met.

The SHO noted that all time constraints and due processes have **not** been met. The SHO noted that Inmate MOORE was provided all reports and/or pertinent documents more than twenty-four (24) hours in advance of the hearing as required per CCR §3320 (c)(2).

The SHO noted that Inmate MOORE is not a participant in the Mental Health Services Delivery System (MHSDS), Disability Placement Program (DPP), or the Developmental Disability Program (DDP). Inmate MOORE does not appear on the Testing Literacy Report as having a TABE score of 4.0 or below.

This RVR was not adjudicated within 30 days, of written notification of D.A. rejection, on May 13, 2008. This Due Process violation precludes the forfeiture of credits only CCR 3320 (f) (3).

**EFFECTIVE COMMUNICATION:**

Effective communication was not established with Inmate MOORE by the SHO. This hearing was held in absentia.

**DUE PROCESS**: The SHO verified that Inmate MOORE received all pertinent documents twenty-four (24) hours prior to this hearing as documented on the CDC-115 and 115-A. All time constraints have not been met. There are Due Process errors.

**STAFF ASSISTANT**: Per §California Code of Regulations (CCR) 3315(d) (2) a Staff Assistant (SA) was not assigned. Inmate MOORE requested the assignment of a SA, however the assignment of a SA did not meet the criteria per CCR -3315 (d) (1)

On September 23, 2007, Inmate MOORE refused to participate in the disciplinary process as indicated on the CDC-115A.

RVR continued on CDC 115 Part C

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | J. SIGLER, Correctional Lieutenant | | 6/25/08 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) S. Olivarez | DATE SIGNED 6/23/08 | TIME SIGNED 1500 |

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS



| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL | 06/15/08 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER

Inmate MOORE was issued his preliminary copy of this RVR on September 23, 2007 October 9, 2007, at 2013 hours. On October 9, 2007, Inmate MOORE was issued his copy of Incident Package CAL-FB3-07-09-0272, CDC-7219'S, and photocopy of the weapon discovered on September 17, 2007, at 1035 hours.

Inmate MOORE is literate, speaks English in the written and/or verbal form and the complexity of the issues are such that assistance is not necessary for Inmate MOORE to comprehend the nature of the charges of the disciplinary process.

**INVESTIGATIVE EMPLOYEE**: Per §California Code of Regulations (CCR) 3315 (d) (1) an Investigative Employee (IE) was assigned. Inmate MOORE'S current housing prevented him from gathering and presenting an adequate defense.

Correctional Officer R. Acevedo was assigned as Inmate MOORE'S 1st I.E, however objected to his assignment. Per CCR 3315(3) (C) a 2nd I.E was assigned.

Correctional Officer J. Olivarez was assigned as Inmate MOORE'S 2nd I.E. on Thursday, May 29, 2008, and Inmate MOORE was issued a completed copy of his I.E. report on June 5, 2008, at 1530 hours.

**REFERRAL FOR FELONY PROSECUTION**:

Inmate MOORE refused to sign on September 23, 2007 requesting for this hearing to be postponed, pending resolution of possible referral to the District Attorney's office for criminal prosecution as indicated on the CDC-115A. Inmate MOORE did request in writing as documented by his signature on the CDC Form 115-A, that he elected to postpone this hearing pending the outcome of the referral to the Imperial County District Attorney's office for criminal prosecution on October 18, 2007.

On May 13, 2008, the Imperial County District Attorney rejected the case for criminal prosecution.

**INMATE'S PLEA**: The charges were not read to Inmate MOORE and the SHO entered a plea of **"NOT GUILTY"** on Inmate MOORE'S behalf. This hearing was held in absentia.

**INMATE"S STATEMENT**: Inmate MOORE chose not to make any statement: other than his written statement in the I.E report. This hearing was held in absentia.

**WITNESSES**: Inmate MOORE verbally stated that he chose to have witnesses at this hearing but refused to sign the CDC 115-A indicating that he did or did not request the presence of witnesses at this hearing.

RVR continued on CDC-115 Part C

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | J. SIGLER, Correctional Lieutenant | | 6/15/08 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) J. Olivarez \ - OL | DATE SIGNED 1500 | TIME SIGNED 6/23/08 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT - PART C

PAGE 3 OF 12

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL | 06/15/08 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER________

Inmate MOORE requested the presence of the following witnesses at this hearing: The SHO disallowed 13 of the requested 15 staff and inmate witnesses.

1. Correctional Officer Hurtado was disallowed by the SHO, as the line of statements in the IE are leading and pertain to an event that occurred prior to the date of September 17, 2007.
2. Correctional Officer Baltazar was disallowed by the SHO, as the line of statements in the IE are leading and pertain to an event that occurred prior to the date of September 17, 2007.
3. Correctional Officer Luck was disallowed by the SHO, as the line of statements in the IE are leading and pertain to an event that occurred after the date of September 17, 2007.
4. Correctional Sergeant Walker was disallowed by the SHO, as the line of statements in the IE are leading and pertain to an event that occurred prior to the date of September 17, 2007.
5. Chief Deputy Warden Ochoa was disallowed by the SHO, as the Chief Deputy Warden was not present and can only respond to procedural questions.
6. Correctional Sergeant Silva was disallowed by the SHO as the Correctional Sergeant was not present and can only respond to procedural questions.
7. Associate Warden A/B G. J. Janda was disallowed as the Associate Warden was not present and can only respond to procedural questions.
8. Inmate BENTON, K-72655 was granted as a requested witness for this hearing via institutional speaker phone, however Inmate MOORE refused to cooperate with the SHO in the beginning of the Disciplinary process.
9. Inmate ALEXANDER, V-20392 was disallowed by the SHO as Inmate ALEXANDER'S testimony would not be relevant to specific act.
10. Inmate WHITLEY, T-51186 was disallowed by the SHO as Inmate WHITLEY'S testimony would not be relevant to specific act.
11. Inmate GEBREZGIABHER, T-43976 was disallowed by the SHO as Inmate GEBREZGIABHER'S testimony would not be relevant to specific act.
12. Inmate FISHER, T-18428 was disallowed by the SHO as Inmate FISHER'S testimony would not be relevant to the specific act.
13. Inmate ALBERGATE, K-29470 was disallowed by the SHO as Inmate ALBERGATE'S testimony would not be relevant to the specific act.
14. The Correctional Officer who searched the cell B3-111, before I moved into this cell pursuant to Title 15, 3287(a) was disallowed by the SHO as the SHO noted that the cell search log was incomplete and was deemed non relevant to the specific act.

Inmate Moore requested the presence of the Reporting Employee, Correctional Officer C. Hughey. The SHO made arrangements to have the RE available via institutional speaker phone as the RE was on his scheduled Regular Days Off however Inmate MOORE refused to cooperate with the SHO in the beginning phases of the Disciplinary process.

RVR continued on CDC-115 Part C

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | J. SIGLER, Correctional Lieutenant | | 6/15/08 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) J. Olivarez | DATE SIGNED 6/23/08 | TIME SIGNED 1500 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C

PAGE 4 OF 12

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL | 06/15/08 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER______

**I.E REPORT:**

Inmate MOORE presented the following statement to the assigned I.E for inclusion in his I.E report: "I requested an Investigator 10-18-07 (October 18, 2007) right after this incident happened. I objected to any postponement of the investigation.

**The SHO noted that an I.E was assigned on September 23, 2007.**

The failure of Prison Officials to appoint an Investigative Employee, 8 months ago violated petitioner's right to a fair hearing as protected by Title 15, Cal. Admin, Code Section 3315 (d) and 3318 (b) and the Due Process clause of the State and Federal Constitution.

Section 3315 of that code reflect(s) recognition that a prisoner who is placed in segregation pending a disciplinary hearing is seriously disabled in his ability to collect evidence on his behalf. Therefore subsection (d) of that section provides for the assignment of an investigative employee and/or staff assistant where "the inmate's housing status makes it unlikely that he can collect and present evidence necessary for an adequate comprehension of the case".

I was placed in segregation at the time of this incident 8 months ago.

No where in the Title 15, does it authorize to postpone an investigation. Section 3316 (c) authorize postponing pending referral for prosecution – not an investigation.

My investigation should have been completed 8 months ago. I would have had a fair chance to prove my innocence.

See all discrepancies may or may not be poignant: 10-19-07

1) Notice 115 Reports all knives were supposed to be found at 11:15 A.M. Even though the days are 5 days after each other. WHITLEY, (T-51186), ALEXANDER, (V-20392)-9-12-07. FISCHER, (T-18428), ALBERGATE. K-29470)-09-12-07.

2) On the 114 of FISCHER, (T-18428), ALBERGATE. (K-29470)-it shows a cell search at 10:30 A.M. hrs. When the knife was found, but on the CDC-115, it shows a weapon stock was found during a cell search at 11:15 A.M. hrs-9-17-07. 2 (two) separate reports on 2 (two) separate falsified Reports.
B) Suspiciously the other two cells searched B3-111 and B3-215 were also searched at exactly 1030 with weapons found. Exhibit C pages 10 and 16 of Incident Report.

3) Exhibit C page 2 of Incident Report shows (B3-111) cell housed MOORE, (F-170016) and BENTON, (F-72655). Also it shows (B3-215) cell housed WALL, (F-46333) and GEBREZGIABHER, (T-43976).

RVR continued on CDC-115 Part C

| | SIGNATURE OF WRITER | DATE SIGNED |
|---|---|---|
| | J. SIGLER, Correctional Lieutenant | 6/15/08 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | J. Olivarez | 6/23/08 | 1506 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C

PAGE 5 OF 12

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL | 06/15/08 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER

Point: "Under Suspects" MOORE, (F17016) housed with WALL (F-46333) in cell B3-111 and BENTON, (F-72655) and GEBREZGIABHER, (T-43976) housed in B3-215. When under "Precipitating Events", Exhibit C page 2 of same report clearly shows WALL (F-46333) and BENTON, (F-72655) were never housed in these particular cells. Theory: Maybe a simple mistake by the preparer of page 2 of 24 (The exhibit C Incident Report, or possibly a list made of suspects prior to cell searches by officers not knowing their actual housing units until after the actual search.

3) The weapons "found" in these cells were behind or in the crevices between the wall and the locker. Why are there (remaining statement could not be determined). Actual weapons, lodged in these areas and in WHITLEY, (T-51186), and ALEXANDER, (V-20392), case involving C/O Hughey nor were their witnesses to the removal of said weapon, by C/O Hughey. Note: Not once in the report by C/O Hughey of WHITLEY, (T-51186), or ALEXANDER'S, (V-20392) does it state in either 115, he C/O Taylor was a witness to placement or the removal of the weapon stock. C/O Taylor stated in WHITLEY, (T-51186), and ALEXANDER'S, (V-20392), Crime Incident Report page 9, that he was a responder who escorted the 2 (two) to the program office to the holding cells. Not once does he mention being a witness to the search, placement or removal of said weapon by C/O Hughey.

4) While in the holding cell WHITLEY, (T-51186), ALEXANDER, (V-20392) witnessed C/O Taylor and Sgt Catlett observe the weapon, which C/O Hughey pulled out of his left leg jump suit wrapped in a brown paper towel for the first time. Point: C/O Hughey is willing to operate by any means to either work a lone or implement other officers to conspire, false reports, fabricate evidence in order to violate inmate's constitutional rights of fair and equal protection of the law.

B) In the Crime Incident Report, prepared by C/O Hughey of WHITLEY, (T-51186), and ALEXANDER, (V-20392) shows C/O Hughey as the primary Officer who then later wrote in C/O Taylor as a witness to cover his tracks (CI) Report page 6 of 9, of WHITLEY, (T-51186), ALEXANDER, (V-20392).

5) These are just some of the motive that stand out in these points made, rather if they're relevant are for someone else, who can help us decide. I am no attorney, but these actions by the officers seem suspicious not to mention. May be a (can not make out) can see more.

6) CI Report (page 10 and 14) clearly shows C/O Colio on primary and C/O AYON as a witness in their own a separate reports.

7) CI Report (page 16 and 24) clearly shows C/O Steel as primary and C/O Hughey as a witness in their own separate reports. Note: CI Report of WHITLEY, (T-51186), and ALEXANDER, (V-20392), C/O Hughey reported C/O Taylor as a witness. C/O Taylor's report says he wasn't.

RVR continued on CDC-115 Part C

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| J. SIGLER, Correctional Lieutenant | 9/5/08 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | J. Olivarez | 6/23/08 | 1500 |

STATE OF CALIFORNIA

RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS

PAGE 6 OF 12

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL | 06/15/08 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER ____

In my opinion C/O Hughey of being a 13 year highly decorated veteran of the most bust for illegal contraband would have the knowledge to circumvent procedures, dabble in gray areas which would benefit to the success of some of the bust in question. I think that he thinks he is able with full confidence to work within the facility above the law. I also think that C/O Hughey and said Officers in these reports should be investigated for their actions and inconsistencies in these reports, because Officer Hughey of being a 13 year veteran should know better.

As of 10-22-07, Inmate BENTON, (F-22655) was Found Not Guilty" of his 115 hearing, with the same write up, same evidence as WHITLEY and ALEXANDER. ALEXANDR and WHITLEY were found "Guilty". Note: Officer involved; C/O Hughey.

Pursuant Title 15, § 3287 (a): Cell, Property, Body Inspections. A) I'm requesting the paperwork that this cell B3-111 was thoroughly inspected before I moved in. B) I never signed off on any paperwork to that effect. C) I'm requesting the person who searched this cell B3-111 before I moved in as a witness. D) The purpose of such inspection is to fix responsibility or the absence of responsibility for security and safety hazards and serious contraband found in the cell, room, dormitory area.

Note: Upon reviewing the cell search log book for Housing Unit B3, the book only goes back to March of 2008. Documentation for cell 111 only references current occupants.

Pursuant Title 15, § 3287 (3): This was a special search looking for weapons because weapons had been found on the yard.

A). I asked C/O Hughey to watch this search and would (was) not allowed to watch this search. Since this was a special search, I should have been permitted to observe this search.

Inmate MOORE presented the following questions to be investigated and answered by the assigned I.E.

**Inmate MOORE submitted the following questions to Correctional Officer Luck**

Q1. In Ad-Seg, Inmate BENTON, (F-72655) was initially placed in a cell by his self and requested to be placed in a gang member's cell here in Administration Segregation?
A1. This question was disallowed by the SHO as it has no relevancy to the specific charge.
Q2. Is this true?
A2. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q3. What is the affiliation of the inmate he is now celled with? When he was in Ad-Seg, who he requested to move in the cell with?
A3. This question was disallowed by the SHO as it has no relevancy to the specific charge

Inmate MOORE had no further questions for Officer Luck.

RVR continued on CDC-115 Part C

| | SIGNATURE OF WRITER | DATE SIGNED |
|---|---|---|
| | J. SIGLER, Correctional Lieutenant | 6/15/08 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) J. Olivarez | DATE SIGNED 6/23/08 — TIME SIGNED 1500 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C

PAGE 7 OF 12

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL | 06/15/08 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER

**Inmate MOORE submitted the following questions to Sergeant Walker.**

Q1. When you were a C/O in Building #5, you knew myself, Inmate MOORE, (F-17016, B3-111) to be a non-gang member and wanted to be housed with a non gang member.
A1. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q2. You took me into building #5 to meet an inmate, a non-gang member from the bay area. He told me his name was Gutter.
A2. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q3. We all three agreed you would move this inmate into the cell with me from building 5, into B3-111 the next day.
A3. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q4. After a few days past and this move didn't happen. I asked you what happen to this move. You told me that you ask the MAC rep in B3 (who was a gang member) did someone move into B3-111, you told me he said someone moved into B3-111, and I told you that was a lie.
A4. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q5. You told me that's why, the move didn't take place. A gang member called off that move. That gang member had already talked to me about moving one of his gang members into the cell with me (B3-111) and I had previously told him "No".
A5. This question was disallowed by the SHO as it has no relevancy to the specific charge

Inmate MOORE had no further questions for Sergeant Walker.

**Inmate MOORE submitted the following questions to Officer Baltazar.**

Q1. On the day the move took place, Inmate BENTON, (F-72655) into B3-111 with Inmate MOORE, (F-17016) your partner C/O Hurtado did not work that day, who orchestrated the move.
A1. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q2. Didn't Inmate MOORE ask you, why is this inmate moving into the cell with him, because no one talk(ed) to MOORE about this move.
A2. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q3. Didn't you tell Inmate MOORE that you thought your partner C/O Hurtado talked to every (one) involved in the move because in house move for convenience the policy is to talk (to) everyone involved in the move.
A3. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q4. What were the two Blood inmates name and number that you moved from downstairs to upstairs in to BENTON, (F-72655) cell?
A4. This question was disallowed by the SHO as it has no relevancy to the specific charge
Q5. You knew that inmate didn't want to be housed with gang members
A5. This question was disallowed by the SHO as it has no relevancy to the specific charge

Inmate MOORE had no further questions for Officer Baltazar

RVR continued on CDC-115 Part C

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | J. SIGLER, Correctional Lieutenant | | 9.15.08 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) J. Olivarez | DATE SIGNED 6/23/08 | TIME SIGNED 1500 |

TATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

**ULES VIOLATION REPORT - PART C**

PAGE 8 OF 12

| DC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL | 06/15/08 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER

**Inmate MOORE submitted the following questions to Officer Hurtado.**

Q1. Two Blood gang members were in the cell downstairs in building #3 and wanted to move upstairs in cell BENTON, (F-72655)

A1. This question was disallowed by the SHO as it has no relevancy to the specific charge

Q2. So you C/O Hurtado and the two blood gang members and Inmate BENTON, (F72655) a blood and Inmate TEAT the guy I was in the cell with at the time. It's a question to what affiliation TEAT is. C/O Hurtado you and these alleged gang members got together and orchestrated to move Inmate TEAT out of B3-111 and into the cell with his folks in B3-202 and move BENTON out of the cell he was in upstairs by his self into the cell with MOORE, (F17016, B3-111); Then you moved the two Blood gang member upstairs into the cell inmate BENTON was in- is that correct?

A2. This question was disallowed by the SHO as it has no relevancy to the specific charge

Q3. Don't you know gang members are ready to fight for cells and their have been problems in B3 about gang members trying to pressure non-gang members out of the cell they are assigned to in the building B3, so they can put gang members in the cell. There was a problem of this nature with cell 125, that you were aware of-is this correct?

A3. This question was disallowed by the SHO as it has no relevancy to the specific charge

Q4. C/O Hurtado why did you talk to all of the inmates involved in the in house move except me Inmate MOORE, F-17016) MOORE. Especially because the move was made for the convenience of gang members personal convenience

A4. This question was disallowed by the SHO as it has no relevancy to the specific charge

Inmate MOORE had no further questions for Officer Hurtado

Inmate MOORE requested the following staff/inmates as witnesses during his hearing:

01. Correctional Officer Hurtado
02. Correctional Officer Baltazar
03. Correctional Officer Luck
04. Correctional Sergeant Walker
05. Chief Deputy Warden Ochoa
06. Correctional Sergeant Silva
07. Associate Warden A/B G. J. Janda
08. Inmate BENTON, K-72655
09. Inmate ALEXANDER, V-20392
10. Inmate WHITLEY, T-51186
11. Inmate GEBREZGIABHER, T-43976
12. Inmate FISHER, T-18428
13. (Inmate) ALBERGATE, K-29470
14. The Correctional Officer who searched the cell B3-111, before I moved into this cell pursuant to Title 15, 3287(a)

RVR continued on CDC-115 Part C

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| J. SIGLER, Correctional Lieutenant | 6/15/08 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| | J. Olivarez | 6/23/08 | 1506 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C

PAGE 9 OF 12

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL | 06/15/08 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER

**REPORTING EMPLOYEE'S STATEMENT: I interviewed C. Hughey who stated the following;** "On Monday, September 17, 2007, at approximately 1030 hours, while performing my duties as B Vocational Officer #3, I reported to Housing Unit B3 to conduct facility wide searches. Officer R. Steel and I approached cell B3-111, jointly occupied by Inmates BENTON, (F-72655) and Inmate MOORE, (F-17016). C/O Steele conducted unclothed body searches on both inmates with negative results and placed them both in handcuffs. I escorted Inmate BENTON to the C-Section dayroom benches. C/O Steele and I then searched cell B3-111. During the course of the search, while using an unfolded paper clip, I discovered one (1) item hidden in the gap, where the lower left shelf of the lower shelving unit attaches to the wall. Using another large unfolded paper clip, I removed one (1) inmate manufactured weapon from the gap. I maintained sole possession of this weapon by placing it inside of my lower left leg pocket of my jumpsuit. C/O Steele and I completed the search with no further contraband being found. I escorted Inmate BENTON to Facility B Program Office where I searched the program holding cell and placed Inmate BENTON inside the holding cell. The Inmate manufactured weapon measured approximately 4 ½ inches long and 7/8 of an inch wide sharpened to a point at one end. The weapon was manufactured from flat metal stock. I proceeded to Central Control where I filled out a brown evidence bag, placed the weapon inside the bag and placed the bag inside Central Control evidence locker #1.

Inmate MOORE submitted statements and not question that could be answered via the I.E process.

**Inmate MOORE DOES Request the Reporting Employee at the Hearing.**
**Inmate MOORE DOES NOT Request the Investigative Employee at the Hearing.**
**Inmate MOORE DOES Request Inmate Witnesses' at the Hearing.**
**Inmate MOORE DOES Request a Staff Witnesses at the Hearing.**

FINDINGS: Inmate MOORE was found "**GUILTY**" of violating CCR, Section 3006 (a), for the specific act of "**POSSESSION ON A INMATE MANUFACTURED WEAPON**". This finding was based on a preponderance of evidence submitted at the hearing, which is considered valid and does substantiate the charge. The evidence includes:

A) The reporting Employee's written report which states in part: "On Monday, September 17, 2007, at approximately 1030 hours, while performing my duties as B Vocational Officer #3, I reported to Housing Unit B3 to conduct facility wide searches. Officer R. Steel and I approached cell B3-111, jointly occupied by Inmates BENTON, (F-72655) and Inmate MOORE, (F-17016). C/O Steele conducted unclothed body searches on both inmates with negative results and placed them both in handcuffs. I escorted Inmate BENTON to the C-Section dayroom benches. C/O Steele and I then searched cell B3-111. During the course of the search, while using an unfolded paper clip, I discovered one (1) item hidden in the gap, where the lower left shelf of the lower shelving unit attaches to the wall. Using another large unfolded paper clip, I removed one (1) inmate manufactured weapon from the gap. I maintained sole possession of this weapon by placing it inside of my lower left leg pocket of my jumpsuit. C/O Steele and I completed the search with no further contraband being found. I escorted Inmate BENTON to Facility B Program Office where I searched the program holding cell and placed Inmate BENTON inside the holding cell. The Inmate manufactured weapon measured approximately 4 ½ inches long and 7/8 of an inch wide sharpened to a point at one end. The weapon was manufactured from flat metal stock. I proceeded to Central Control where I filled out a brown evidence bag, placed the weapon inside the bag and placed the bag inside Central Control evidence locker #1.

RVR continued on CDC-115 Part C

| | SIGNATURE OF WRITER | DATE SIGNED |
|---|---|---|
| | L. SIGLER, Correctional Lieutenant | 6/15/08 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) J. Olivarez | DATE SIGNED 6/23/08 / TIME SIGNED 1500 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE 10 OF 12

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL | 06/15/08 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER

B) CDC 837, Crime Incident Report authored By Correctional Officer R. Steele, dated September 17, 2007 which states in part" On Monday, September 17, 2007 at about 1030 hours, while performing my duties as Bravo Recreation Officer, While performing facility searches of Bravo 3 Housing Unit with the assistance of C. Hughey, I approached cell B3-111, jointly occupied by Inmate(s) MOORE, (F-17016, B3-111L) and Inmate BENTON, (F-72655, B3-111U). I conducted an unclothed body search on both inmates with negative results. I placed both inmates in handcuffs and escorted Moore to B3, C-Section dayroom benches. During the course of the search of cell B3-111, C/O (Correctional Officer Hughey discovered an item hidden in the gap of the lower left shelve, where the shelf attaches to the wall. C/O Hughey used a large unfolded paperclip to remove one inmate manufactured weapon from the gap. C/O Hughey maintained sole possession of the weapon by placing it in his jumpsuit pocket. C/O Hughey and I escorted Inmate MOORE to the Facility B Program holding cell area. I conducted a search of the holding cell prior to placing Inmate MOORE into the cell.

C) CDC 837, Crime Incident Report authored By Correctional Officer E. Bustamante, dated September 17, 2007 which states in part" On Monday, September 17, 2007 at about 1115 hours, while performing my duties as B3 Floor #2, I was inventorying property in cell 111 belonging to Inmate BENTON, (F-72655, B3-111U) and Inmate MOORE, (F-17016, B3-111L). While I was going through the property, I cut my middle left finger on a razor blade. I then went to Medical to be evaluated and referred to Pioneers Memorial Hospital.

C) Cell Search Log reflecting cell B3-111 which reflects Inmate MOORE'S name and CDC number.
SHO NOTE: The cell search log is incomplete as it does not reflect an in date or an out date for Inmate MOORE.

D) Incident Report Log number CAL-FB3-07-09-0272 photocopy numbered page 18 of 24 attached depicts the Weapon recovered from cell B3-111 on the date of September 17, 2007.

E) Penal Code Section 626.10 paragraph: (h) states: As used in this section, "dirk" or "dagger" means a knife or other instrument with or without a hand guard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death.

F) Inmate MOORE made the following statement to Medical Staff as documented "States he was told he had a knife & never had weapon in his life".

**SHO NOTE:**
The SHO noted that the weapon was 4 ½ inches long and 7/8 of an inch wide sharpened to a point at one end without a handle. The weapon was manufactured from flat metal stock and the weapon recovered from cell B3-111, however crudely fashioned is capable of inflicting Serious / Great Bodily Injury or death. The SHO believes that Inmate MOORE had knowledge of the weapon recovered by staff. The preponderance of evidence presented supports a finding of GUILTY for the specific act of "POSSESSION OF A WEAPON".

The SHO noted that Inmate MOORE claimed that an Investigative Employee should have been assigned 8 months ago, which would have allowed him to a have a fair chance to prove his innocence. The SHO believes that the assignment and completion of an I.E. report is part of the disciplinary process and cannot be initiated while the hearing of the RVR has been postponed pending DA review

RVR continued on CDC 115 Part C

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | J. SIGLER, Correctional Lieutenant | | 6/15/08 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) J. Olivarez | DATE SIGNED 6/23/08 | TIME SIGNED 1500 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE 11 OF 12

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL | 06/15/08 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER____

As documented on the CDC-115-A, Inmate MOORE refused to sign on September 23, 2007 requesting for this hearing to be postponed, pending resolution of possible referral to the District Attorney's office. On October 18, 2007, Inmate MOORE did request in writing as documented by his signature on the CDC 115-A, that he elected to postpone this hearing pending the outcome of the referral to the Imperial County District Attorney's office for criminal prosecution.

Inmate MOORE requested to introduce findings from previous 115 hearings adjudicated prior this hearing for review by the SHO as evidence for this hearing. The SHO believes that any evidence and or statements obtained in a previously adjudicated hearing is not relevant as this information is hear say.

The SHO noted that a search of the cell upon it becoming vacant is to identify structural damages or missing fixtures, television cable outlets etc. The inmate assigned to any cell is afforded the opportunity to identify to the housing unit officer any damages or broken fixtures and to relinquish any contraband found within the cell. All inmates were advised of the searches prior to date of September 17, 2007 via a Program Status Report (PSR).

C/O Hughey clearly articulates in his RVR that he and Officer Steele conducted a cell search of cell B3-111 occupied by BENTON (F-72655) and MOORE (F-17016). During the search Officer Hughey discovered secreted in the gap between the shelving unit and wall one inmate manufactured weapon, measuring 4 ½ inches long and 7/8 of an inch wide sharpened to a point at one end. The weapon was manufactured from flat metal stock without a handle.

The SHO noted that Inmate MOORE was correct in identification of errors in the CDC-837 Crime Incident Report (CAL-FB3-07-09-0272). The SHO believes the errors to be typing errors only. Additional documentation throughout the CDC-837, correctly lists the inmates by name and CDC identification numbers supporting the SHO'S belief that the errors are purely typing errors and does not support Inmate MOORES defense that the reports are false and or fabricated.

As stipulated in Calipatria State Prison orientation handbook dated August 2006, page #22 VII. Housekeeping/Cell standards reads in part: "You are held responsible for all items found/discovered in your cell. You are also responsible for the status of your cell. Once you are assigned to a cell, search it thoroughly. Immediately report all contraband, damaged or missing fixtures, television cable outlets etc. to the housing unit officer, otherwise you will be held responsible." Inmate MOORE clearly had enough time to thoroughly search his cell and notify his building officer of any contraband including the weapon recovered from his cell.

The SHO reviewed Inmate MOORE'S written, I. E questions and disallowed all of the questions. Inmate MOORE presented statements via the IE that could not be answered. The SHO advised Inmate MOORE at the preliminary stages of the hearing process that a SHO may allow or disallow questions but must address the reason(s) why a question is disallowed in the body of the hearing disposition. However as noted Inmate MOORE has refused to participant in the disciplinary process from the onset and refused to cooperate and/or attend this hearing per CCR 3320. Inmate MOORE was advised that this hearing would be adjudicated in absentia due to his lack of cooperation.

RVR continued on CDC-115 Part C

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | J. SIGLER, Correctional Lieutenant (signature) | | 6/15/08 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) J. Olivarez (C/O) | DATE SIGNED 6/23/08 | TIME SIGNED 1500 |

STATE OF CALIFORNIA

RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS

PAGE 12 OF 12

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 09-07-B22 | CSP-CAL | 06/15/08 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER

**DISPOSITION**: Inmate MOORE was assessed:

Zero (0) Days, FORFEITURE OF CREDIT consistent with a Due process Violation for a Division "**A1**" Offense. Ten (10) days Loss of Yard, beginning June 15, 2008 and ending June 29, 2008.

The inmate-manufactured weapon will be disposed of per DOM 52051.16. (Upon completion of court proceedings)

Inmate MOORE was referred to UCC / ICC with the recommendation of SHU Term assessment, and referred to an Institutional Psychiatrist for an evaluation per Madrid Decision prior to SHU Term implementation.

Inmate MOORE was referred to UCC / ICC with the recommendation of Program and Housing Needs review.

Inmate MOORE was not counseled, and/or advised of future behavior expectations.

Inmate MOORE was not notified as to CCR §3327(a), Non Restoration of Forfeited Credits. No Loss of Good Time Credits was imposed.

Inmate MOORE will be advised of his rights to appeal the findings and/or disposition of the hearing, pursuant to CCR §3084.1 and CCR §3312 (b) (1) and he would be receiving a completed copy of this hearing report upon final audit by the Chief Disciplinary Officer (CDO) whose review and signature affirms, reverses, or modifies this disciplinary action and constitutes the First Level of Review for appeal purposes.

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | J. SIGLER, Correctional Lieutenant | | 6/15/08 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) J. Olivarez | DATE SIGNED 6/23/08 | TIME SIGNED 1500 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA
**SHU TERM ASSESSMENT WORKSHEET**
CDC 629-A (Rev 3/96)

DEPARTMENT OF CORRECTIONS

| CDC NUMBER | NAME (LAST, FIRST, MI) | INSTITUTION | UNIT |
|---|---|---|---|
| F17016 | Moore | CAL | ASU/B |

**1. RULE VIOLATION RESULTING IN SHU TERM ASSESSMENT**
(If more than one SHU assessable offense and no SHU term has been established, use most serious as base term and less serious as aggravation.)

a. Rule No. 3006(a) Date Issued 9/17/07 Title Dangerous/Property

b. Specific Act Possession of a weapon other than a firearm or explosive device
(Must be an offense on SHU Term Assessment Chart.)

c. List range of months for the offense using SHU Time Computation Table........ 6 LOW 10 EXP 15 HIGH

d. Enter "expected" (mid-range) years, months, days of confinement........ YR ___ MO 10 DAYS ___

**2. FACTORS IN MITIGATION AND AGGRAVATION**
(Enter "NONE" for item 2c or indicate amount of time. Describe factors and document sources. Use only factors listed in the DOM 62050 or concurrent offenses.)

a. Mitigating Factors. Time subtracted for mitigations........ - YR ___ MO 1 DAYS ___
1) No serious or similar conduct
2)
3)

b. Aggravating Factors. Time added for aggravations........ + YR ___ MO ___ DAYS ___
1)
2)
3)

ASSESS / IMPOSE [signature] ICC w/A1 4/24/08

c. Total time added or subtracted........ = YR ___ MO 1 DAYS ___

**3. TOTAL SHU CONFINEMENT TIME ASSESSED**........ YR ___ MO 9 DAYS ___
(Subtract or add time for mitigation or aggravation to expected, item 1d plus or minus 2c)

**4. DATE OF ADMINISTRATIVE SEGREGATION CONFINEMENT/VIOLATION**..... YR 07 MO 9 DAY 17

**5. MAXIMUM DATE OF RELEASE FROM SHU**........ YR 08 MO 6 DAY 17
(Add total time assessed to date of confinement, item 3 plus 4)

**6. MINIMUM SHU CONFINEMENT TIME TO SERVE**........
(Enter 75% of the total SHU time (item 3) using the SHU Time Computation Table) YR ___ MO 6 DAYS 23

a. Date of confinement/violation (item 4)........ YR 07 MO 9 DAY 17

**7. MINIMUM ELIGIBLE RELEASE DATE (MERD)**........ YR 08 MO 4 DAY 10
(Add the minimum SHU time to the date of confinement, item 6 plus 6a)

**8. FORFEITURE OF GOOD CONDUCT CREDITS FOR SUBSEQUENT MISCONDUCT**
(Enter "NONE" for item 8a or indicate the amount of time lost and describe and document the misconduct for which credit is being forfeited). SHU inmates may forfeit up to 45 days of clean conduct credits for each disciplinary infraction that is not serious enough to warrant the assessment of a subsequent or concurrent SHU term. Such forfeiture may be assessed against credits already earned or future credits.

a. Time forfeited for CDC 115 - Dated: ________ ........ YR ___ MO ___ DAYS ___
1)
2)

b. **ADJUSTED MERD** Cannot Exceed MAXIMUM........ YR ___ MO ___ DAY ___
(Add the amount of time forfeited to the prior MERD, item 7 plus 8a)

| NAME AND TITLE OF STAFF COMPUTING TERM | DATE SIGNED | DATE ICC ESTABLISHED TERM |
|---|---|---|
| [signature] CCII | 6/24/08 | |

DISTRIBUTION: ORIGINAL - CENTRAL FILE; YELLOW - INMATE; PINK - AUDITOR

(009) 07.07.CC

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: FEB 19 2008

In re: Gary Moore, F17016
Calipatria State Prison
P.O. Box 5002
Calipatria, CA 92233

IAB Case No.: 0714571 Local Log No.: CAL-07-01865

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner A. A. Read. All submitted documentation and supporting arguments of the parties have been considered.

I APPELLANT'S ARGUMENT: It is the appellant's position that on September 26, 2007, the appellant received a false CDC Form 115, Rules Violation Report-Part "C", Log # 07-07-B34, dated August 16, 2007, from Calipatria State Prison (CAL) Correctional Lieutenant (Lt.) J. Sigler. The appellant states that on August 16, 2007, Lt. Sigler also threatened the appellant with retaliation saying that the appellant would be in big trouble if he did not go along with what the lieutenant wanted to do, as in accepting what he called his deal. The appellant contends that he did not go along with his so-called deal. It is contended that the appellant knew that all 200 write-ups were ordered dropped from serious to administrative by this date due to the CDC Forms 115, Rules Violation Reports being weak and not all true. The appellant states that Lt. Sigler made good on his threat by allowing Correctional Officer Hughey to lie on September 17, 2007, and say that he found an inmate manufactured weapon in the gap where the lower shelf of the lower shelving unit attaches to the wall in the cell that the appellant was assigned to. The appellant requests that an investigation needs to be done; that Lt. Sigler needs to be disciplined and the weapon violation against the appellant needs to be dropped. It is also requested that the appellant receive a transfer to a northern institution.

II SECOND LEVEL'S DECISION: The reviewer found that the appellant's concerns have been properly addressed by involved and/or assigned CAL staff. The Second Level of Review (SLR) states that the appellant was interviewed on October 18, 2007, by Facility Captain W. J. Price regarding the appellant's appeal issues. The reviewer states that the appellant's appeal was granted in part at the First Level of Review (FLR), in that a thorough confidential appeal inquiry into the appellant's allegations was conducted by administrative staff. The appellant was advised that the appeal inquiry was completed; however, the appellant was not advised of the specific finding, as all staff complaint findings are confidential and would not be released to the appellant. On October 25, 2007, the appellant requested a SLR and reiterated his position that he was not satisfied with the FLR response. The appellant did not provide any additional compelling information or facts to warrant modification of the FLR response. The appellant's appeal is granted in part at the SLR, as an inquiry into his allegations has been conducted. All staff personnel matters are confidential in nature and as such, results of any inquiry will not be shared with staff, members of the public or inmates. Although, the appellant has the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. Based upon the aforementioned information, the SLR granted in part the appeal.

III DIRECTOR'S LEVEL DECISION: Appeal is denied.

A. FINDINGS: The documentation and presented arguments are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the SLR. The examiner reviewed California Code of Regulations, Title 15, Section (CCR) 3004, Rights and Respect of Others, CCR 3271, Responsibility of Employees, CCR 3287, Cell, Property and Body Inspections, and CCR 3391, Employee Conduct. Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and an inquiry has been completed at the SLR. The examiner contacted Correctional Counselor II D. Bell, Appeals Coordinator, in the CAL Appeals Office on January 7, 2008, to request and obtain a copy of the finalized inquiry

A

report. On January 8, 2008, the examiner received a faxed copy of the inquiry report containing the institution's decision and/or action taken regarding the appellant's complaint. In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant. Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process. The appellant has not shown any documentation or other verified evidence that would lend credence to his appeal issues and requests. The appellant has been duly informed regarding his appeal issues and responding institutional staff has addressed all pertinent areas of the appellant's complaint. The examiner finds that the appellant has failed to present any new documentation and/or evidence that would substantiate his claim; therefore, justification for intervention at the Director's Level of Review is not warranted.

The appellant has added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B).

**B. BASIS FOR THE DECISION:**
California Penal Code Section: 832.5, 832.7, 832.8, 5058
CCR: 3001, 3004, 3006, 3084.1, 3270, 3271, 3278, 3287, 3391
CDC Operations Manual Section: 13030.10, 31140.14
Administrative Bulletin (AB) 98/10: PROCESSING OF INMATE/PAROLEE APPEALS, CDC FORMS 602, WHICH ALLEGE STAFF MISCONDUCT
AB 05/03: PROCESSING OF ADULT INMATE/PAROLEE APPEALS, CDC FORM 602, WHICH ALLEGE STAFF MISCONDUCT

**C. ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc: Warden, CAL
Appeals Coordinator, CAL

B

RECEIVED CAL APPEALS OCT 29 2007

RECEIVED CAL APPEALS OCT 02 2007

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region CAL
1. ______ 2. ______

Log No. A 0701865
1. ______ 2. ______

Category: 7 per CDW

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Moore | F17016 | | A5 104 |

A. Describe Problem: Correctional Lieutenant, J. Sigler wrote a false Rules Violation Report - Part C, Log No. 07-07-B34 Dated 8/16/07 I received this false report 9/26/07 from J. Olivariz also 8/16/07 Lt. Sigler threatened me with retallation saying I would be in big trouble if I didn't go alone with what he wanted to do 8/16/07 as far as me accepting what he called a deal - I did not go alone with his so-call deal (CCR 3413 Incopatible Activity (a)) 1) Effective Communication is false - what Lt. Sigler said was

If you need more space, attach one additional sheet. continued on additional sheet

B. Action Requested: 1) an investigation need to be done 2) Lt Sigler needs to be Discipline 3) weapon vilation against me needs to be dropped. 4) Transfer me to a prison up north (asap).

Inmate/Parolee Signature: Gary B Moore Date Submitted: 9/30/07

C. INFORMAL LEVEL (Date Received: ______)

Staff Response: ______

Staff Signature: ______ Date Returned to Inmate: ______

CSP-CAL-BYPASS

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

RECEIVED NOV 15 2007 INMATE APPEALS BRANCH

Signature: ______ Date Submitted: ______

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: CAL A 0701865

RECEIVED CAL APPEALS OCT 02 2007 CAL A0701865
RECEIVED CAL APPEALS OCT 29 2007

If I don't go alone with this deal he had for me I would be in big trouble 8/16/07. I Knew that all 200 write-ups were ordered dropped from serious to Administrative by this time; the write ups weak and not all ture. 8/16/07 was the fifth hearing they tried to give me. Each time I told them I did not refuse to give up my tray and that my write was not ture.

Sigler version 2) Inmate's Plea is false - 8/16/07 The charges were not reed to me and I didn't not enter a pled 8/16/07

Sigler version 3) Inmate's statement is wrote down falsely - my statement 8/16/07 was = on wednesday July 11, 2007 at approximately 1815 hours, I did not refuse to relinquish my evening meal tray to protest for "A" section Housing Unit Air Conditioning not working - c/o watts went to about 5 cells and didn't get trays and the porter told him the guys were protesting and then c/o watts went and called the (SST) - then the Air conditioner got fixed - c/o watts collected trays at around 1945 thats when he open my slot and I put my tray out like I allway do after the feeding is done. I told Lt sigler 8/16/07 that if c/o watts had open my tray slot or the cell door for collection of trays the way he allways does. I would have put my tray out the way I allway had done. And that's the real reason the 115 was dropped. I saw c/o watts their on two occassion when they wanted me to accept a deal. c/o watts wrote up the whole building 200 people for refusing to give up their tray - some people were at work, so you know he was't telling the whole treth, they were at work and got writ[illegible]

I believed Lt Sigler OKd for c/o Hughey on 9/17/07 to lie or OKd for him to put and say he found a inmate "manufactured" weapon in the gap

11-13-07

Inmate Benton was moved in the cell with me after the threat by Lt Sigler over my objection, an inhouse move. The cellmate I had was moved out and Benton was move in.

The C/O Hurtado who made the move and Benton Knew about the move for over a week, I didnt Know about this move untill the day of the move when I objected to Benton moving in with me. C/O Hurtado wasnt at work this day. His partner C/O Botis-Zapr told me the day of the move he thought his partner talk to all parties about the move.

I didnt Know inmate Benton, I had never noticed he, I dont Know why he would want to move in with me.

Gary B Moore

E

CAL A07 01865

RECEIVED CAL APPEALS OCT 29 2007

State of California

Department of Corrections and Rehabilitation

# Memorandum

Date : October 18, 2007

To : Inmate Moore, CDCR #F-17016
A5-104L/ Calipatria State Prison

Subject: **STAFF COMPLAINT RESPONSE - APPEAL #CAL-A-07-01865**

**APPEAL ISSUE:** It is your position that on August 16, 2007, Correctional Lieutenant Sigler falsified a Rules Violation Report (RVR) Part "C" and threatened you with retaliation if you did not accept his deal.

**DETERMINATION OF ISSUE**: A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal has been handled as follows:

☒ PROCESSED AS A STAFF COMPLAINT APPEAL INQUIRY
☐ REFERRED TO THE OFFICE OF INTERNAL AFFAIRS (Note: You will be notified of the conclusion of any internal affairs investigation)

**SUMMARY FOR APPEAL INQUIRY:**
You were interviewed on Thursday, October 18, 2007, by W. J. Price, Facility Captain and asked if you had anything else that you would like to add to your appeal. You stated, "The disposition portion of the Rules Violation Report (RVR) #07-07-B34, filed by Correctional Lieutenant J. Sigler, was a false report." You further stated that on August 16, 2007, you were called to Lieutenant Sigler's office for a hearing on the above mentioned RVR. You stated that when you arrived there, Lieutenant Sigler "offered you a deal" but you refused to accept the deal and the hearing never took place.

**FINDINGS FOR AN APPEAL INQUIRY:**
Your appeal is PARTIALLY GRANTED at the First level, as an inquiry into your allegation has been conducted. ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE. As such, results of any inquiry/investigation will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process.

Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.

[signature] A/W

G. J. JANDA
Associate Warden – Housing A/B

10/22/07
Date

F

State of California Department of Corrections and Rehabilitation

# Memorandum

Date: NOV 08 2007

To: Inmate Moore, CDC# F-17016
A5-104 Calipatria State Prison

Subject: **STAFF COMPLAINT RESPONSE - APPEAL # CAL-A-07-01865**

**APPEAL ISSUE:** It is your position that on August 16, 2007, Correctional Lieutenant (Lt.), J. Sigler, falsified part "C" of Rules Violation Report (RVR) Log # 07-07-B34, and threatened you with retaliation if you did not accept his deal. You allege Lt. Sigler "offered you a deal", however, you refused to accept the deal and the disciplinary hearing never took place.

You are requesting on appeal that an investigation be initiated in reference to your allegations, you be transferred, Lt. Sigler be reprimanded, and the weapon RVR issued to you be dismissed.

**DETERMINATION OF ISSUE**: A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal has been handled as follows:

☐ REFERRED TO THE OFFICE OF INTERNAL AFFAIRS (Note: You will be notified of the conclusion of any internal affairs investigation)

**SUMMARY FOR APPEAL INQUIRY:**
You were interviewed on October 18, 2007, by Correctional Facility Captain, W.J. Price, and reiterated as to what was written in the appeal.

The following witness(es) was/were questioned: Lt. J. Sigler.

The following information was reviewed as a result of your allegations of staff misconduct: 1. Confidential Appeal Inquiry signed by Chief Deputy Warden, T. Ochoa dated October 23, 2007.

**FINDINGS FOR AN APPEAL INQUIRY:**

Your appeal is PARTIALLY GRANTED at the Second level, as an inquiry into your allegation has been conducted. ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE. As such, results of any inquiry will not be shared with staff, members of the public, or inmates.

Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process.

Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.

T. OCHOA
Chief Deputy Warden
Calipatria State Prison

11/07/07
Date

H

CAL A 0701865

RECEIVED CAL APPEALS OCT 29 2007

STATE OF CALIFORNIA
RIGHTS AND RESPONSIBILITY STATEMENT
CDCR 1858 (Rev. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections and Rehabilitation has added departmental language (shown inside brackets, in non-boldface type) for clarification purposes.*

***Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:***

**YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER** [this includes a departmental peace officer] **FOR ANY IMPROPER POLICE** [or peace] **OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS'** [or inmates'/parolees'] **COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN** [or inmate/parolee] **COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.**

F17016

| | | | |
|---|---|---|---|
| Gary B Moore | Gary B Moore | 10-19-07 | |
| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED | |
| INMATE/PAROLEE PRINTED NAME | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER | DATE SIGNED |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED | |
| M.Y. LEE | M Y Lee | 10/19/07 | |

DISTRIBUTION:
ORIGINAL -
Public - Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC form 602
Employee - Institution Head/Parole Administrator
COPY - Complainant

I

Exhibit "B" Packet

114 Shows when I was placed in Ad-seg

-Serious Rule Violation Report - where I requested Investigator 9/23/07

602 - To Director Level trying to get an investigator and an investigation going as soon as possible

STATE OF CALIFORNIA
**ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE**
**CDC 114-D (Rev 10/98)**

DEPARTMENT OF CORRECTIONS

DISTRIBUTION:
WHITE - CENTRAL FILE
BLUE - INMATE (2ND COPY)
GREEN - ASU
CANARY - WARDEN
PINK - HEALTH CARE MGR
GOLDENROD - INMATE (1ST COPY)

| INMATE'S NAME | CDC NUMBER |
|---|---|
| MOORE | F-17016 |

## REASON(S) FOR PLACEMENT *(PART A)*

- [X] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS
- [ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY
- [X] ENDANGERS INSTITUTION SECURITY
- [ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:
You were initially placed in ASU on 9/17/07, for the offense of Possession of a weapon as referenced in RVR dated 09/17/07, Log # 09-07-B22. If you are found guilty of this RVR you could be subject to a SHU term with a tentative MERD of 5/02/08. On 03/20/08, ICC identified you as eligible for potential 180-design placement and elected to retain you in ASU past your MERD for institutional security pending the adjudication of the RVR. Due to your involvement in Possession of a Weapon, ICC determined that you require a higher level of supervision than provided at CAL's 270 facility and that you may pose a threat to the safety and security of the institution if released to the 270 GP pending adjudication of the RVR. Based on these facts you will be retained in ASU upon the expiration of your MERD pending adudication of the RVR. You are not a participant in the Mental Health Service Delivery System (MHSDS).

- [ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL)
- [ ] IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE: / /

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | TITLE |
|---|---|---|---|
| 03/20/08 | J. ANAYA | | CCII |

| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
|---|---|---|---|---|
| | | | | |

| [ ] INMATE REFUSED TO SIGN | INMATE SIGNATURE | CDC NUMBER |
|---|---|---|
| | | |

## ADMINISTRATIVE REVIEW *(PART B)*

***The following to be completed during the initial administrative review by Captain or higher by the first working day following placement***

### STAFF ASSISTANT (SA)

| STAFF ASSISTANT NAME | TITLE |
|---|---|
| | |

**IS THIS INMATE:**

- LITERATE? [ ] YES [ ] NO
- FLUENT IN ENGLISH? [ ] YES [ ] NO
- ABLE TO COMPREHEND ISSUES? [ ] YES [ ] NO
- FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? [ ] YES [ ] NO
- DECLINING FIRST STAFF ASSISTANT ASSIGNED? [ ] YES

Any "NO" requires SA assignment

[ ] **NOT ASSIGNED**

### INVESTIGATIVE EMPLOYEE (IE)

| INVESTIGATIVE EMPLOYEE'S NAME | TITLE |
|---|---|
| | |

- EVIDENCE COLLECTION BY IE UNNECESSARY [ ] YES [ ] NO
- DECLINED ANY INVESTIGATIVE EMPLOYEE [ ] YES [ ] NO
- ASU PLACEMENT IS FOR DISCIPLINARY REASONS [ ] YES [ ] NO
- DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED [ ] YES

Any "NO" may require IE assignment

[ ] **NOT ASSIGNED**

### INMATE WAIVERS

- [ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER
- [ ] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME
- [ ] NO WITNESSES REQUESTED BY INMATE

| INMATE SIGNATURE | DATE |
|---|---|
| | |

### WITNESSES REQUESTED FOR HEARING

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| | | | |
| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
| | | | |

**DECISION:** [ ] RELEASE TO UNIT/FACILITY__________ [ ] RETAIN PENDING ICC REVIEW [ ] DOUBLE CELL [ ] SINGLE CELL PENDING ICC

REASON FOR DECISION:

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| | | | | |

| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | DATE OF REVIEW |
|---|---|---|
| | | |

**See chronological Classification Review document (CDC 128 - G) for specific hearing information**

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS

# SERIOUS RULES VIOLATION REPORT

Investigate this before I sign hearing before I sign [illegible]

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| F-17016 | MOORE | CCR §3006(a) | 09/17/07 | CAL-SP IV | 09-07-B22 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☒ YES ☐ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☒ **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ [signature struck out] | X |
| ☒ **I REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ X Larry B Moore | 10-18-07 |

DATE NOTICE OF OUTCOME RECEIVED: 5-13-08 — DISPOSITION: DA Rejected

☐ **I REVOKE** my request for postponement. — INMATE'S SIGNATURE ▶ — DATE

## STAFF ASSISTANT

STAFF ASSISTANT ☒ REQUESTED ☐ WAIVED BY INMATE — INMATE'S SIGNATURE ▶ X X Larry B Moore — DATE 9-23-07

☐ ASSIGNED — DATE — NAME OF STAFF

☒ NOT ASSIGNED — REASON: I/M does not meet criteria per CCR 3315 (d)(2)

## INVESTIGATIVE EMPLOYEE

INVESTIGATIVE EMPLOYEE ☒ REQUESTED ☐ WAIVED BY INMATE — INMATE'S SIGNATURE ▶ X X Larry B Moore — DATE 9-23-07

☒ ASSIGNED — DATE 5-29-08 — NAME OF STAFF: R. Aguado / Relieved on 5/29/08 / C/O Olivarez

☐ NOT ASSIGNED — REASON

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☐ REPORTING EMPLOYEE ☐ STAFF ASSISTANT ☐ INVESTIGATIVE EMPLOYEE ☐ OTHER ______ ☒ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

I/M MOORE F17016 NOT REQUESTING ANY WITNESS.

X ______________ ______________ DATE

X I/M MOORE F17016 REFUSED TO SIGN THE POSTPONEMENT OF DISCIPLINARY HEARING. C/O J. PRATO. 9.22.07. 2023 HRS

INVESTIGATOR'S SIGNATURE ▶ — DATE

| ☒ COPY OF CDC 115-A GIVEN INMATE. | BY: (STAFF'S SIGNATURE) ▶ J. Prato | TIME 2023 | DATE 9.22.07 |
|---|---|---|---|

CDC 115-A (7/88)

*— If additional space is required use supplemental pages —*

STATE OF CALIFORNIA -DEPARTMENT OF CORRECTIONS AND REHABILITATION ARNOLD SCHWARZENEGGER, GOVERNOR

**INMATE APPEALS BRANCH**
1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001

December 17, 2007

MOORE, GARY, F17016
Calipatria State Prison
P.O. Box 5002
Calipatria, CA 92233

RE: IAB# 0713678 DISCIPLINARY

Mr. MOORE:

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal. The Branch examines and responds to inmate and parolee appeals that are submitted on a CDC Form 602, Inmate/Parolee Appeal Form, after the institution or parole region has responded at the Second Level of Appeal.

Institution and parole staff are available to assist you in obtaining additional copies of forms and documents required to submit an appeal. The inmate library offers resources and assistance to obtain general information regarding regulations, procedures, policies, and government agency addresses. Additionally, your assigned Counselor or Parole Agent, or the Appeals Coordinator can answer any questions you may have regarding the appeals process. The Inmate Appeals Branch appreciates your responsible use of the appeal system to address your grievance.

The Inmate Appeals Branch has received an appeal from you and has determined that it does not comply with the appeal procedures established in California Code of Regulations (CCR) Title 15, Article 8, and is being screened-out and returned to you pursuant to CCR 3084.3 for the following reason(s):

Your appeal was rejected, withdrawn or cancelled. If you disagree with that decision, contact the Appeals Coordinator. You must comply with instructions from that office.

N. GRANNIS, Chief
Inmate Appeals Branch

****PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE****

RECEIVED CAL APPEALS OCT 25 2007

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region 1. CAL 2. ____ Log No. 1. ____ 2. ____ Category |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Moore | F17016 | | A5-104 |

A. Describe Problem: What are you talking about The Facility Lt on the yard issued you me the RVR prior to my place next in ad-seg

on 10/18/07 my (I.E.) C/O Lee told me the investigation of a weapon being found in the cell I was assigned to 9/17/07 is being postponed

because I postponed my 115 hearing pending referral for prosecution

If you need more space, attach one additional sheet.

RECEIVED CAL APPEALS OCT 25 2007

B. Action Requested: I want the investigation into a weapon being found in the cell I was assigned to 9/17/07 - to go forward I don't want the investigation to be postponed I just want the hearing postponed pending referral of prosecution

Inmate/Parolee Signature: Gary B Moore Date Submitted: 10/24/07

C. INFORMAL LEVEL (Date Received: ____ )

Staff Response: ____

Rejected

RECEIVED NOV 13 2007 INMATE APPEALS BRANCH

Staff Signature: ____ Date Returned to Inmate: ____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: ____ Date Submitted: ____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

SCREENED OUT NOV 05 2007

0713678

# INMATE/PAROLEE APPEAL FORM

CDC 602 (12/87)

RECEIVED CAL APPEALS OCT 22 2007
RECEIVED CAL APPEALS OCT 25 2007

| Location: Institution/Parole Region | Log No. | Category |
|---|---|---|
| 1. | 1. | |
| 2. | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Moore G | F17016 | | A5-104 |

A. Describe Problem: My Investigative Employee C/o Lee came to see me 10/18/07 I singed a request my hearing be postponed pending the outcome of referral for prosecution: C/o Lee then informed me my investigation will also postponed.

I'm in Administrative Segregation, I was placed in ad-seg Sept. 17, 07 the date of the allege incident. I don't want to postpone my investigation. If I wasn't in ad-seg I would already had my investigation done. witnesses are being transfered and going home

If you need more space, attach one additional sheet. see attach paper

B. Action Requested: To get the investigation of the incident CRR§ 3006 (a)/ Log No. 09-07-B22/ Possession of a inmate manufactured weapon Sept 17, 07 - started immediately

Inmate/Parolee Signature: Gary B Moore Date Submitted: 10/18/07

C. INFORMAL LEVEL (Date Received: ______)

Staff Response:

RECEIVED NOV 13 2007 INMATE APPEALS BRANCH

Staff Signature: ______ Date Returned to Inmate: ______

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

I'm appealing my IE C/o Lee who told me 10/16/07 my investigation into me allegely possessing a weapon 9/17/07 is being postponed I want this investigation to go forward Immediately:

What are you talking about some Lt issued me a RVR prior to my placement in Ad-seg

Signature: ______ Date Submitted: ______

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

SCREENED OUT NOV 05 2007

SCREENED OUT NOV 05 2007

RECEIVED CAL APPEALS OCT 22 2007
RECEIVED CAL APPEALS OCT 25 2007

11-7-07

To The Director

On Monday Sept 17, 2007 after a search of the cell I was assigned to B3-111L, I was put in ad-seg, where I am presently, because of an allege weapon being found in the cell.

I believe Lt. Sigler is behind this. I received a threat from Lt Sigler 8/16/07 that if I didn't accept a deal he had concerning a write-up C/O Watts wrote about 200 inmates in B3 July 11, 2007 not giving up their tray in a protest.

I was innocent of that write-up so I didn't accept his deal 8/16/07 and he had to drop that write up. he also lied about what happen at the meeting between myself and (Lt Sigler) him 8/16/07 Rules Violation Report Part-C (Log. No 07-07-B34) willfully Delaying a Peace Officer

I believe Lt Sigler is behind this write-up Sept 17, 2007 (Log No 09-07-B22) Possession of Inmate manufactured weapon because of Lt Sigler threat to me 8/16/07

I believe he had C/O Hughey lie about this weapon. I believe I was set-up by Lt Sigler

ON 10/18/07 C/o Lee stated: who was supose to be my Investigative Employee", the investigation into violation CCR § 3006(a) log no. 09-07-B22 Possession of Inmate Manufactured weapon Sept 17, 2007, will be postponed because I postponed my 115 hearing pending referral for prosecution. I want my Investigation to go forward immeditely

I had just saw C/o Lee Oct 13, 07 for the frist time, she told me to write question of who I want her to talk to. The next time I see her is Oct 18, 07, telling me because I postponed my 115 hearing 10/18/07 - That my investigation will be postponed

This postposement of my investigation is violating my Due process rights and is hurting me as far as proving my innocents

I write to the chief Disciplinary Officer 10/18/07 by U save Em Envelope Requesting my investigation not be postponed and go forward immeditely and requesting pursuant to CCR § 3293 Polygraph Exam that all parties involved take a Polygraph Exam: I have not received an answer as of today 11-7-07, from the chief Disiplinary officer

I have also filed a staff Complaint concerning Lt Sisler Cal-A-07-01865: Due Date 11-20/2007

Gary B. Moore
F17016

2

RECEIVED CAL APPEALS OCT 22 2007

RECEIVED CAL APPEALS OCT 25 2007

and also by postponing the investigation you are hurting the witnesses memories

I'm completely inhibited from discovering and interviewing potential witnesses and gathering evidence on my own behalf

I'm presently in need of staff to conduct a full investigation of the events that led upto the incident, as well as the incident itself, under the direction of myself immediately, so I will be able to present this evidence at my future hearing

The failure of prison officials to have staff assistant or investigative Employee assistant me in this investigation immediatily is prejudicial to me and violates my Due process Rights

SCREENED OUT OCT 22 2007

SCREENED OUT NOV 05 2007

# Exhibit "C"

Rule violation Report Packet

Rule violation -Part C, IE Report

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

804 TO RECORDS 4 / 18 / 08

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| F-17016 | MOORE | | CAL-CSP | A5-144L | 04-08-A5-004 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR§ 3290 (d) | REFUSED TO SUBMIT URINE SAMPLE | FA HU5 | 04/17/08 | 1500 hours |

CIRCUMSTANCES

On Thursday, April 17, 2008, at approximately 1500, while performing my duties as AD-SEG #2, C/O #1, I was assigned to collect a urine sample from Inmate MOORE, F-17016, A5-144L. I ordered Inmate MOORE to submit a urine specimen for drug screening that was mandated by the Institution's Facility Random Drug Testing Selection process. Inmate MOORE refused, stating: "I am not on drugs, so why are you making me test?' I advised Inmate MOORE that he would receive a Rule Violation Report (CDC-115) for refusing to submit a urine specimen for drug screening and that he was in violation of California Code of Regulations, Title 15, Section 3290 (d). Inmate MOORE was notified three (3) hours prior to submit the urine sample for drug screening. Inmate MOORE is aware of this report. Inmate MOORE is not a participant in the Mental Health Services Delivery System (MHSDS).

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ J. NUTT, Correctional Officer | 4-17-08 | AD-SEG #2 | F/S |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING |
|---|---|---|
| ▶ A. THOMPSON, Correctional Sergeant | | DATE ______ LOC. ______ |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☐ SERIOUS | | | ▶ | ☐ HO ☐ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| ☒ CDC 115 | ▶ [signature] | 4/26/08 | | | | |
| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |

HEARING

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | | SIGNATURE | DATE | TIME |
|---|---|---|---|---|
| | | ▶ | | |
| REVIEWED BY: (SIGNATURE) ▶ | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE ▶ | DATE | |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | | DATE | TIME |

CDC 115 (7/88)

STATE OF CALIFORNIA
**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE 1 OF 2

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 04-08-A5-004 | CAL-CSP IV | 4-28-08 |

☐ SUPPLEMENTAL ☐ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☑ IE REPORT ☐ OTHER

On 4-23-08, approximately 1500 hours, I C/O STANGLE informed Inmate MOORE F-17016, that I had been assigned as the Investigative Employee for Rules Violation Report Log 04-08-A5-004 charging him with violation of CCR § 3290(d), Refused to Submit Urine Sample. I explained to Inmate MOORE that my function was to collect information, interview him, the Reporting Employee and all witnesses having information about the incident. Inmate MOORE stated that he understood my function and expressed no objections to my assignment. Therefore, as the assigned and accepted Investigator, I conducted the investigation and submit the findings in this report.

**STATEMENT OF CHARGED INMATE:** Inmate MOORE submitted the following written statements:

Then a little while later C/O NUTT returned with SGT. THOMPSON. SGT. THOMPSON himself was high on drugs or drunk this day April 17, 2008 his eyes were very red and glossy. SGT. THOMPSON stated; "Did my officer explain this to you"? MOORE stated; "No, he didn't. SGT. THOMPSON stated; "I not going to explain it to you, are you going to take the test? MOORE stated; I'm not on drug testing. SGT. THOMPSON again stated; Are you going to take the test? MOORE stated again; I'm not on drug testing and I'm not going to say this again SGT. THOMPSON again stated; Are you going to take the test? MOORE stated again; For the third time, I'm not on drug testing. C/O NUTT then stated; "I thought you weren't going to say that again. SGT. THOMPSON then proceeded to laugh uncontrollably and then walk away.

I want the paperwork from the institution facility Random Drug Testing selection process from 4-17 08 and how this process operates. I want the results of my previous Random Tests for drugs from medical-urine test. I want to know how many inmates have taken 2 previous tests that were negative and are subjected to continue to take these tests. This constitutes mandatory Random Drug Testing that I am not a member of. I have never had any write-ups for alcoholic beverages, a controlled substance, unauthorized drugs, or intoxicants. I have been in AD-SEG for 7 months locked up 24/7.

**STATEMENT OF REPORTING EMPLOYEE;**

Officer Nutt stated Inmate MOORE refused to submit a urine sample when instructed to do so.

**INMATE WITNESS STATEMENT:** On **4- 25-08,** Inmate WILLIAMS # V-25079 and Inmate JONES # V-27774 submitted the following statements;

WILLIAMS V-25079; MOORE stated that I have already taken two different Random Drug Tests that were negative. I told C/O NUTT that I'm not on continuos mandatory Random Drug Testing, 3290(2). MOORE never refused because C/O NUTT never brought MOORE a container to pee in.. When C/O NUTT states

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | STANGLE, Correctional Officer [signature] | | 4/28/08 |
| ☑ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) [signature] | DATE SIGNED 4/28/08 | TIME SIGNED 1200 |

STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C** PAGE 2 OF 2

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| F-17016 | MOORE | 04-08-A5-004 | CAL-CSP IV | 4-28-08 |

☐ SUPPLEMENTAL ☐ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☒ IE REPORT ☐ OTHER

inmate MOORE refused stating "I am not on drugs so why are you making me test" C/O NUTT is making a false rule violation report.

JONES V-27774; MOORE stated; That I have already taken two different Random urine tests that were negative here 3290(d).I told C/O NUTT that I'm not on mandatory Random Drug Testing .3290(2).MOORE never refused because C/O NUTT never brought a container for MOORE to pee in. When C/O NUTT states; Inmate MOORE refused stating "I am not on drugs so why are you making me test" C/O NUTT is making a false Rule Violation Report.

Inmate MOORE DOES NOT request the presence of the Reporting Employee at the hearing;

Inmate MOORE DOES NOT request the presence of the Investigative Employee at the hearing;

Inmate MOORE DOES request the presence of an Inmate Witness at the hearing; Inmate WILLIAMS #V-25079 A-5 143 and Inmate JONES #V-27774 A-5 145.

Inmate MOORE DOES request the presence of a Staff Witness at the hearing; C/O NUTT and SGT. THOMPSON.

**THIS CONCLUDES THE INVESTIGATIVE EMPLOYEE REPORT**

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | STANGLE, Correctional Officer [signature] | | 4/26/08 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) [signature] | DATE SIGNED 4/26/08 | TIME SIGNED 1300 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| F-17016 | MOORE | 3290 (D) | 04/17/08 | CAL-CSP IV | 04-08-A5-004 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☒ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☒ **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ [signature] | 4/2/08 |
| ☐ **I REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ | |

DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I REVOKE** my request for postponement. | ▶ | |

## STAFF ASSISTANT

STAFF ASSISTANT

☐ REQUESTED ☒ WAIVED BY INMATE

INMATE'S SIGNATURE ▶ [signature] DATE 4/2/08

☐ ASSIGNED — DATE — NAME OF STAFF

☐ NOT ASSIGNED — REASON

## INVESTIGATIVE EMPLOYEE

INVESTIGATIVE EMPLOYEE

☒ REQUESTED ☐ WAIVED BY INMATE

INMATE'S SIGNATURE ▶ [signature] DATE 4/2/08

☐ ASSIGNED — DATE — NAME OF STAFF [signature]

☐ NOT ASSIGNED — REASON

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☐ REPORTING EMPLOYEE ☐ STAFF ASSISTANT ☐ INVESTIGATIVE EMPLOYEE ☐ OTHER [illegible] ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| Jones V27794 [illegible] | ☐ | ☐ | C/O Holt | ☐ | ☐ |
| [illegible] V30795 [illegible] | ☐ | ☐ | [illegible] Thompson | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| INVESTIGATOR'S SIGNATURE | DATE |
|---|---|
| ▶ | |

| ☐ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) | TIME | DATE |
|---|---|---|---|
| | ▶ | | |

CDC 115-A (7/88)

*— If additional space is required use supplemental pages —*

Exhibit "D" Packet

committee meeting 9/27/07
committee meeting 3/27/08

602
Inmate Appeals Branch letter
letter to Appeal Dated 4/2/08

RECEIVED CAL APPEALS OCT 1 8 2007

STATE OF CALIFORNIA

CAL A07019870

DEPARTMENT OF CORRECTIONS & REHABILITATION
CDC-128G (Rev. 12/91)

RECEIVED CAL APPEALS OCT 24 2007

CDCR NO: [illegible]

NAME: MOORE

HOUSING: ~~A5/128L~~

PS: 66 LEVEL: IV

EPRD: 05/16/2027

CUSTODY: MAX

WG/PG: D2/D EFF. 09/17/2007

NEXT ANNUAL: 02/2008

**INITIAL ASU REVIEW:** RETAIN ASU PENDING COMPLETION OF DISCIPLINARY PROCESS FOR RVR DATED 09/17/2007 (LOG# 09-07-B22) / ESTABLISH MAX CUSTODY & WG/PG D2/D EFFECTIVE 09/17/2007 / **REFER TO CSR RX 180 DAY ASU EXTENSION** / DOUBLE CELL APPROVED / ASSIGN WALK-ALONE STATUS (INDIVIDUAL WITH CELLMATE) / NO MHSDS, MDO, DDP, OR DPP ISSUES NOTED / RESCHEDULE ICC ON 03/20/2008.

Inmate Moore was screened in person in ICC today for the purpose of an Initial ASU Review. Inmate was placed in Administrative Segregation Unit (ASU) on 09/17/2007 for the offense of Possession of Inmate Manufactured Weapon, referenced in CDC 115 dated 09/17/2007 (Log# 09-07-B22). If found guilty, Inmate could be assessed a 10 month SHU term with a tentative MERD of 05/02/2008. The 114D interview was conducted on 09/18/2007 by W. J. Price, FC. The 114D hearing was conducted on 09/27/2007 by ICC. Staff Assistant was not assigned. Investigative Employee was not assigned. The issues are not complex nor is the Inmate illiterate. His reading GPL is 12.9. Review of the 114D was within time limitations and no witnesses were requested. Committee finds that segregated housing is appropriate and elects to retain inmate in ASU pending completion of the disciplinary process for RVR dated 09/17/2007 (Log# 09-07-B22). **Committee refers this case to the CSR requesting a 180 day ASU extension.** This case will be referred to the D.A. for possible prosecution. If inmate is scheduled for court, CAL will be responsible for transportation of Inmate. Case factors remain the same as noted in Initial CDC 128G dated 05/03/2006. TB code 32 is noted in CDC 128C dated 07/27/2007. No enemies in AD SEG are noted. Inmate is assigned to Walk-Alone Status (Individual with Cellmate). Inmate's case was reviewed for double cell housing and no pervasive pattern of in cell violence is noted. Inmate is assigned to double cell housing with no special restrictions. CDC 1882 is located in the central file. He was endorsed to CAL-IV 270 on 04/04/2006. Inmate does not meet MDO, DPP or DDP criteria. Inmate is not a participant in the MHSDS. CDC 128-C2 indicates NCF. Confidential information was not used. Inmate is assigned to Ad Seg earning status WG/PG D2/D effective 09/17/2007, custody is changed to MAX. Inmate was placed on non contact visiting status effective 09/17/2007. Inmate was advised he would be rescheduled for ICC on 03/20/2008. Inmate actively participated and stated he understood the actions of the Committee. Inmate was advised of his right to appeal and this Committee acts as his first level of appeal. His next Annual Review is 02/2008. Inmate had no questions or comments to address to the committee at this time. There are no other pertinent case factors noted. (acf)

G.J. Janda, CDW (A) Chairperson | J. Anaya, CCII Recorder | W. J. Price, FC Reviewed

**Committee Members:** J. Builteman, AW; J. Kellerman, Asst. C&PR; D. Middleton, Ph.D.
**cc:** Counselor, Inmate
**Date: 09/27/2007**

**CLASSIFICATION:** ICC AD/SEG

**INST:** CAL-IV

SCREENED OUT OCT 1 8 2007

STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION
CDCR-128G (Rev. 12/91)

**CDCR NO #:** F17016 **NAME:** MOORE **HOUSING:** A5/144L
**PS:** 62 **LEVEL:** IV **EPRD:** 05/16/2027 **CUSTODY:** MAX
**WG/PG:** D2/D EFF. 09/17/2007 **NEXT ANNUAL:** 02/2009

**SUBSEQUENT INITIAL REVIEW:** RETAIN ASU DUE TO SAFETY & SECURITY OF THE INSTITUTION NOTING PENDING RVR DATED 09/17/2007 (LOG# 09-07-B22) / REAFFIRM MAX CUSTODY & WG/PG D2/D EFFECTIVE 09/17/2007 / **REAFFIRM ICC ACTION OF 03/20/2008 REFERRING THIS CASE TO THE CSR RX 90 DAY ASU EXTENSION** / DOUBLE CELL APPROVED / REAFFIRM YARD GROUP NO. 5, CONTROLLED COMPATIBLE (BLACKS, NORTHERN HISPANICS, OTHERS) / NO MHSDS, MDO, DDP, OR DPP ISSUES NOTED / RESCHEDULE ICC ON 06/19/2008.

Inmate Moore was screened in person by ICC today for the purpose of a Subsequent Initial Review. Inmate's reading GPL is 12.9. Staff Assistant was not assigned. Inmate was initially placed in the Administrative Segregation Unit (ASU) on 09/17/2007 for the offense of Possession of Inmate Manufactured Weapon, referenced in CDCR 115 dated 09/17/2007 (Log# 09-07-B22). If found guilty, inmate could be assessed a 10 month SHU Term with a tentative MERD of 05/02/2008. Committee notes ICC of 03/20/2008 elected to retain inmate in ASU upon completion of tentative MERD for institutional security pending adjudication of the RVR. A new 114D was ordered issued by ICC on 03/20/2008. The 114D administrative review was conducted on 03/24/2008 by J. Kellerman, FC. The 114D administrative review was conducted within time limitations. Staff Assistant was not assigned. Investigative Employee was not assigned. Witnesses were not requested. Inmate was given 72 hours to prepare for today's ICC review. Committee finds that segregated housing is appropriate and elects to retain inmate in ASU due to safety and security of the institution noting pending RVR dated 09/17/2007 (Log# 09-07-B22). Inmate is alleged to have committed a SHUable offense subject to a tentative MERD of 05/02/2008. Committee finds that due to inmate's possession of a weapon, he requires a greater level of supervision than is provided by CAL's 270 Facility. Inmate is charged with the possession of a dangerous weapon, in which the weapon discovered was secreted inside the inmate's cell. The possession of a weapon demonstrates inmate's intent to possibly use the weapon upon either staff or other inmates, and creates a potential for violence. Committee notes that if found guilty of this charge, inmate will be eligible for transfer to a 180 design facility and that inmate requires a greater level of supervision than is provided at CAL's 270 Facility. Committee finds that inmate's alleged involvement with dangerous deadly weapons may pose a threat to the safety and security of institution if he were to be released to the 270 general population pending adjudication of the RVR. **Committee reaffirms ICC action of 03/20/2008 referring this case to the CSR requesting a 90 Day ASU extension.** Retain MAX Custody and WG/PG D2/D effective 09/17/2007. Inmate's case was referred to the D.A. on 03/25/2008 and is pending D.A. review. Inmate stated he has no enemy concerns on Yard Group No. 5, Controlled Compatible (Blacks, Northern Hispanics, Others). Committee acts to reaffirm Yard Group No. 5, Controlled Compatible (Blacks, Northern Hispanics, Others). Inmate's case was reviewed for double cell housing and no pervasive pattern on in cell violence is noted. Inmate is assigned to double cell housing with no special restrictions. Inmate does not meet initial MDO criteria. Inmate is not a participant in the MHSDS. Inmate does not meet DDP criteria. Confidential information was not used. Case factors remain the same as noted in initial 128G dated 05/03/2006. TB Code of 32 is noted in 128C dated 07/27/2007. Inmate was advised of his right to appeal and that this Committee acts as his First Level of Appeal. Inmate actively participated and stated he understood Committee's actions. Inmate stated he has problems with gang members and is requesting to be single celled. Inmate does not meet the criteria for single cell status. Inmate's next Annual Review is 02/2009. Inmate was advised he would be rescheduled for ICC on 06/19/2008. There are no other pertinent case factors noted. (acf)

G.J. Janda, CDW (A) Chairperson | J. Anaya, CCII Recorder | J. Kellerman, FC Reviewed

**Committee Members:** G. Chavarria, AW (A); J. Criman, Asst. C&PR; D. Middleton, Ph.D.
**cc:** Counselor, Inmate
**Date: 03/27/2008** **CLASSIFICATION:** ICC ASU **INST:** CAL-IV

RECEIVED CAL APPEALS APR 0 1 2008

Calipatria State Prison
Chief Deputy Warden's
MAR 28 2008
Received

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region 1. ______ 2. ______

Log No. 1. ______ 2. ______

Category 11

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, ~~and classification and staff~~ representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Moore | F17016 | | A5/144 |

A. Describe Problem: I have been put in harms way 3/27/08 by Mr Anaya intentionally I'm not a gang member. I arrived in ad-seg Sept 17, 2007 So I told the committee at my initial appearance sept. 2007, that I had been theatened by Blood gang members: I was put on walk alone status; Sept. 07 I agreed with this action
3/27/08 I went to committee MR Anaya took me off walk alone status Based on Sgt Callet's Knowly false statement 3/08 — that I had been theatered by Crip gang members I don't want yard with any gang members

If you need more space, attach one additional sheet. are gang associates (CCR § 3023) See attach Sheet

B. Action Requested: I'm requesting to be put back on walk alone status while in ad-seg and taken out of harms way immediately
I don't want yard with CRIP OR Blood members OR associates of these gangs while I'm in Ad-seg (CCR § 3023)

Inmate/Parolee Signature: Gary B Moore Date Submitted: 3/27/08

RECEIVED CAL APPEALS APR 0 7 2008

INMATE APPEALS BRANCH
APR - 7 2008
RECEIVED

Thru 2d Lvl

C. INFORMAL LEVEL (Date Received: ______ )

Staff Response: ______

Staff Signature: ______ Date Returned to Inmate: ______

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: ______ Date Submitted: ______

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

SCREENED OUT APR 01 2008

III

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION ARNOLD SCHWARZENEGGER, GOVERNOR

**INMATE APPEALS BRANCH**
1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001

May 28, 2008

MOORE, GARY, F17016
Calipatria State Prison
P.O. Box 5002
Calipatria, CA 92233

RE: IAB# 0728883 PROGRAM

Mr. MOORE:

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal. The Branch examines and responds to inmate and parolee appeals that are submitted on a CDC Form 602, Inmate/Parolee Appeal Form, after the institution or parole region has responded at the Second Level of Appeal.

Institution and parole staff are available to assist you in obtaining additional copies of forms and documents required to submit an appeal. The inmate library offers resources and assistance to obtain general information regarding regulations, procedures, policies, and government agency addresses. Additionally, your assigned Counselor or Parole Agent, or the Appeals Coordinator can answer any questions you may have regarding the appeals process. The Inmate Appeals Branch appreciates your responsible use of the appeal system to address your grievance.

The Inmate Appeals Branch has received an appeal from you and has determined that it does not comply with the appeal procedures established in California Code of Regulations (CCR) Title 15, Article 8, and is being screened-out and returned to you pursuant to CCR 3084.3 for the following reason(s):

The CDC 602, Inmate/Parolee Appeal Form, must be completed through the Second Level of Review on behalf of the Warden or Parole Region Administrator.

N. GRANNIS, Chief
Inmate Appeals Branch

I

****PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE****

4/2/08

Dear Appeals

I filed an Emergency 602 to the Warden 3/27/08 without a CDC 128-G because I was put in Harm way 3/27/08 when I went to committee

Calipatria is gonna send me a CDC 128-G whenever they want to, this is how they operate. They are in no hurry to get me paper I need.

I feel in my heart from the contact, I have had with ass-warden Mr Awaya and Sgt Callet these two men are Racist agianst Black inmats

I requested 3/27/08 to file a Rights and Responsibility statement pursuant to Penal Code §148.6 and a staff complaint § 3391 agianst the two

I'm requesting Sacramento send me the proper forms, because Calipatria Prison are refusing to provide the form to me

It my Right to file these documents

Sincerely

Gary B Moore

F17016

II

JS44

(Rev. 07/89)

# CIVIL COVER SHEET

FILED
JUL 2 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

**Gary B Moore**

**DEFENDANTS**

**J. Sisler, T.A. Catlett, J. Anaya, A. Thompson, J. Whit, C. Hugley, Steele**

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Imperial
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
**(IN U.S. PLAINTIFF CASES ONLY)**

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

**Gary B Moore**
**P.O. Box 5002**
**Calipatria, CA 92233**
**F17016**

**ATTORNEYS (IF KNOWN)**

**'08 CV 1198 H PCL**

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT (For Diversity Cases Only)**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

2254 1983 ✓
FILING FEE PAID Yes No ✓
IFP MOTION FILED Yes ✓ No
COPIES SENT TO Court Prose

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

**42 U.S.C. 1983**

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS – PERSONAL INJURY | TORTS – PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153Recovery of Overpayment of Veterans Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 690 Other | ☐ 861 HIA (13958) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 360 Other Personal Injury | | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | | | ☐ 710Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| | | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | | | | | ☐ 950 Constitutionality of State |
| | | | | | ☐ 890 Other Statutory Actions |

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS |
|---|---|---|
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General |
| ☐ 230 Rent Lease & Eiectmant | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☒ 550 Civil Rights |
| ☐ 290 All Other Real Property | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding ☐ 2 Removal from State Court ☐ 3 Remanded from Appelate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 **DEMAND $** Check YES only if demanded in complaint: **JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE Docket Number

DATE July 2, 2008 ~~SIGNATURE OF ATTORNEY OF RECORD~~